(Decided 21st June, 1894.)

---

ANNIE R. HANSON, and others *vs.* THE LITTLE SISTERS OF THE POOR OF BALTIMORE, and THE VESTRY OF SAINT MARY'S CHURCH, Hampden, Baltimore County.

*Valid devise — Parish school — Charter restrictions on Property held by Corporations.*

A devise to The Vestry of Saint Mary's Church, a duly incorporated body, to be applied to the maintenance of the parish school connected with said church, is not void for indefiniteness and uncertainty; such school being under the management of the rector of the parish, and an integral part of the church organization.

Restrictions imposed by the charter of a corporation upon the amount of property it may hold, cannot be taken advantage of collaterally by private persons, but only by the State in a direct proceeding instituted for that purpose.

A devise to a corporation in excess of the estate and property limited by its charter, not being void on its face, will be held valid as to all the world, until it has been determined, at the instance of the State, that the charter has been violated.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Court below (DENNIS, J.), finally ratifying and confirming an auditor's report and account.

The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, MCSHERRY, BOYD and BRISCOE, J.

*Richard S. Culbreth,* for the appellants.

*Harry M. Benzinger,* and *Charles J. Bonaparte,* for the appellee, The Little Sisters of the Poor.

*Richard Bernard,* (with whom was *Alfred D. Bernard,* on the brief,) for the appellee, The Vestry of Saint Mary's Church.

FOWLER, J., delivered the opinion of the Court.

The two questions presented by this appeal arise on a bill filed for the construction of the third clause of the will of the late Thomas H. Hanson, of Baltimore City. Under this clause certain warehouse property was devised to Wilton Snowden in trust, to hold the same and collect the rents and income, and after paying all taxes, &c., to divide the net income thereof equally between " The Little Sisters of the Poor," " The Vestry of Saint Mary's Church," Hampden, Baltimore County, and three other corporations not necessary now to mention. The trustee was authorized to sell the property so devised at any time within two years from the death of the testator, and to divide the net proceeds of such sale equally between the five corporations

*The Court declined to hear counsel for The Vestry of St. Mary's Church.

just referred to. In a subsequent part of the clause under consideration, the testator declared that it was his express desire that the money so received by " The Vestry of St. Mary's Church " from the sale of said property, should be applied by it to the maintenance of the parish school connected with said church. After paying the income to the appellants for more than a year without objection, the trustee, in the exercise of the power given by the will, sold the property for $13,500. This sale has been finally ratified by the Circuit Court of Baltimore City, and an account has been stated distributing the net proceeds of the sale in accordance with the provisions of the will. The widow and heirs at law of the testator have excepted to this account because of the sums of money allowed respectively to " The Little Sisters " and " The Vestry." As to the former, the exceptions are based on the ground that that corporation already has an estate which it has acquired by purchase, gift or devise, amounting on the whole, to $50,000, the amount limited by its charter, and that therefore, it is incapable of taking any more. And as to the Vestry, the contention is that the devise or bequest to it is void for indefiniteness and uncertainty. The Court below overruled these exceptions and ratified the account, and from this action this appeal was taken by the exceptants.

In view of the worthy objects of the testator's bounty, it is fortunate that no settled rule or principle of law will prevent us from giving full effect to the testator's benevolent intention to aid these two corporations.

What we have said in *Eutaw Place Baptist Church vs. Shiveley, et al.,* 67 *Md.,* 494, and in *Halsey, et al. vs. The Convention of the Prot. Epis'l Church, et al.,* 75 *Md.*.275,would seem to be conclusive as to the validity of the bequest to the Vestry. Indeed the case first cited would appear to be identical with this. There, the testator bequeathed to the Eutaw Place Baptist Church a sum

of money, the income to be applied to the support of the Sunday School attached to the said church, and it was urged in that case, as here, that the bequest to the church was "in trust for an indefinite and uncertain body of individuals that fluctuates from time to time without legal succession," and that therefore the bequest was void because of this uncertainty, and want of legal identification of the objects to be benefited by the bequest. In meeting this contention this Court said, ALVEY, former Chief Judge, delivering the opinion: "If the bequest had simply been made to the Church, without reference to the Sunday School, there could have been no question of its validity, and the church could have applied the fund to any purpose and to promote any object within the sphere of its corporate powers and functions, as a religious body." The principle, so well settled in this State "that a bequest to trustees for the benefit of a vague and indefinite object is equally as invalid as an immediate bequest to such object," was held to have no application whatever to the bequest to the Baptist Church. There, the bequest was to the church, to be applied to the Sunday School attached to the church, and although the school was held to be an unincorporated body, it was "shown to be an integral part of the church organization, and therefore embraced within the scope of the corporate functions and work of the church."

In the case before us the testator directed the money to be paid to The Vestry of St. Mary's Church, and he expressed the desire that it should be applied to the maintenance of its parish school. It is shown by the general canons of the Protestant Episcopal Church, as well as by the testimony of the Right Reverend William Paret, Bishop of that Church in this State, that the parochial school, wherever it exists, is, like the Sunday School, under the management of the Rector of the parish, and an integral part of the church organization. These parochial schools, as appears by the Bishop's testimony, are as old as the

Church itself in this country; "they were in the Church before the war of the Revolution, when the Church here stood as part of the British Church." It is obvious, therefore, there can be no foundation in fact for the contention that the testator directed the Vestry to execute a trust not germane to the object for which it was incorporated. It might as well be contended that because the corporation known as The Vestry of St. Mary's Church was not expressly authorized by its charter, as in fact it is not so authorized, to maintain a Sunday School, such school is not germane to the powers of the Church corporation. But in addition to this view it will be observed that the charter of the Vestry provides that "the duties and powers of said Vestry," which of course includes the Rector of the church, "as to all matters properly belonging to a vestry shall be as prescribed by the various clauses of the Act of 1798, ch. 28, known as "The Vestry Act," and it is conceded by the appellants that a corporation formed under that Act has power to maintain parish schools.

In the other case we have cited, *Halsey's Case*, where the devise was "to the Convention of the Protestant Episcopal Church of the Diocese of Maryland to be held as a place for a Church school for boys," the general principles in force in Maryland in regard to the jurisdiction of chancery, as applicable to the enforcement of trusts for charitable and religious purposes, were fully and clearly stated, and it was there held that the devise to the Convention was good. We are unable to see any substantial distinction between the cases we have mentioned and the one we are now considering. In each of them there is a corporation capable of taking, and the object and character of the trust are definite and certain. "When these exist" said the present Chief Judge of this Court in delivering the opinion in *Halsey's Case*, and "when the gift is made to one capable of taking it, and when the trust is declared in definite terms, a Court of chancery has the same power to en-

force such a trust for a charitable or religious purpose, as it has to enforce a trust for any other purpose."

The case of the *Church Extension of the M. E. Church, et al. vs. Smith, &c.,* 56 *Md.,* 362, so much relied on by the appellants, has, we think, no application whatever to the case before us now, in which, as in the *Eutaw Place Baptist Church Case, supra,* the bequest was to the church to be applied to a clear and well defined object,— in the one case to the Sunday School, and in the other to the parish school—both obviously within the sphere of the functions of the respective churches. In the Church Extension Case the bequests were declared void for want of certainty and definiteness in the objects to be benefited, which is not the case here.

The objection to the validity of the bequest to the " Little Sisters of the Poor," is, as we have seen, based upon entirely different grounds, and presents an important question—namely, whether the legal capacity of a corporation to take property in excess of the amount prescribed by its charter, can be raised collaterally by private persons, or in any other way, except in a direct proceeding by the State.

The corporation in question was formed in 1854 under the name of " The Trustees of the Roman Catholic Asylum for Widows in the City of Baltimore." Its name was subsequently changed to that of " The Little Sisters of the Poor," and the provisions of its charter (section 1, chapter 199 of the Act of 1854) is that it may " have, take and hold by purchase, gift and devise any estate and property not exceeding in the whole the sum of $50,000." Testimony was taken by both sides to show the actual value of the property held by this corporation, but we think it unnecessary to consider this question, for, conceding that the charter limits have been exceeded, it is not for the appellants to complain so long as the State, which created the corporation, remains silent. The doctrine of *ultra vires* as applied to contracts generally, relied on by the

appellants has no application here. The question is as to the validity of a bequest. Nor is there any doubt as to the intention of the testator. He intended this part of his property to go to "The Little Sisters," and therefore if we are prevented by no rule of law to the contrary, we must give full effect to his intention as expressed in his will. In regard to the question before us there has been considerable conflict of authority. The Court of Appeals of New York in *Matter of McGraw,* 111 *N. Y.*, 66, announced the doctrine relied on by the appellants here, but the Supreme Court of the United States in *Jones vs. Habersham,* 107 *U. S.*, 174, adhere to the contrary doctrine,—namely, that restrictions imposed by the charter of a corporation upon the amount of property it may hold cannot be taken advantage of collaterally by private persons, but only by the State in a direct proceeding instituted for that purpose. And it was so held in a case where, as here, the heirs of a decedent filed a bill to have declared void certain devises to a charitable corporation, which it was averred would swell the amount of property owned by the corporation to a value greater than the charter authorized. It cannot be denied that this corporation had power to take and hold any estate and property not exceeding the charter limits, and the devise therefore was not void on its face, and must be held valid as to all the world until it has been determined, at the instance of the State, that the charter has been violated. If they have violated the law of their being they have committed a wrong not against any particular individual but against the State, and this wrong can only be inquired into by a proceeding on the part of the State. *The Whitman Mining Company vs. Baker,* 3 *Nevada,* 386. In other words the corporation can take property to any amount, but can hold it, as against the State, only to the amount provided by its charter. The contrary doctrine would make it very hazardous to take title from a corporation with

such a limitation on its charter, and if the objection could be made by any one, title to property once held by such corporations would cease to be marketable, litigation would be promoted, and Courts would be constantly called on to decide the very difficult questions of fact, as to whether the property of a corporation does or does not exceed in value the charter limits. In the case now before us the estimates of the witnesses differ greatly, and a devise or bequest would be held valid or void according to the estimate adopted by the Court. We think this is one of those cases which may be put in the class with those referred to by the late Justice MILLER in his dissenting opinion in *Fritts vs. Palmer*, 132 *U. S.*, 293, where he says: " I can conceive of cases where corporations have been authorized to acquire a limited amount of real estate, such as the legislature may conceive to be useful and necessary to the purpose for which they are organized \* \* \* \* in which the question as to whether they have exceeded that amount \* \* \* \* may be one for the State *alone*, and not of any private citizen."

Adopting, therefore, the doctrine of the Supreme Court of the United States in *Jones vs. Habersham, supra*, we will affirm the order appealed from.

*Order affirmed.*

(Decided 21st June, 1894.)