WILLIAM H. BALTZELL ET AL. vs. CHURCH HOME
AND INFIRMARY OF BALTIMORE CITY ET AL.

*Corporations—Statement in Certificate as to Qualification of
Incorporators—Charitable Society Not Made a Religious
Corporation Because Controlled by a Church—Valid-
ity of Charitable Bequests—Legacy to Be Applied
to Purposes Within Scope of Charter.*

The Act of 1852, Chap. 231, authorized the formation of cor-
porations for certain designated purposes by seven or more
"free white persons, citizens of the United States, and a ma-
jority citizens of this State." *Held,* that it is not essential to
the validity of an incorporation under this Act that the cer-
tificate should expressly state on its face that the incorporators
were such persons as are authorized by the Act to form the
corporation.

The fact that the officers and members of a corporation created
for charitable purposes are required to be members of a par-
ticular church does not make it a religious corporation.

The charter of the Church Home stated that its object was to
provide and sustain a home for sick and other distressed per-
sons belonging to the Protestant Episcopal Church and oth-
ers.   It was provided that the officers of the corporation
should be communicants of that church. *Held,* that under the
charter, the Church Home is a private eleemosynary corpora-
tion, and the fact that its officers are members of a particular
church does not operate to make it a religious corporation,
and that consequently it is not necessary that a bequest to the
Church Home should receive the sanction of the Legislature
under the Declaration of Rights, Art. 38, relating to religious
societies.

When property is devised to a corporation for such uses as are
within the scope of its corporate powers, or the objects to
which the gifts are to be applied are such as the corporation

.. was organized for, then such gift cannot be declared invalid on the ground that it is in trust for indefinite objects, or in conflict with the Rule Against Perpetuities, unless the intention to create a trust be clear.

A testator bequeathed property to the Church Home "to be kept as a separate fund in remembrance of my wife and daughter, and the income thereof used in maintaining aged and infirm persons in said Home, or in maintaining free beds in their infirmary, in the discretion of the legatee." The charter of the Home stated its object to be to provide and sustain a home for poor and distressed persons belonging to the Protestant Episcopal Church and others, and for the sick as well as other distressed persons. *Held,* that maintaining aged and infirm persons and free beds are purposes within the scope and powers of the legatee; that the fact that the legacy is directed to be kept as a separate fund is immaterial; that no trust with indefinite beneficiaries, or in conflict with the Rule Against Perpetuities, is created by this bequest, which is therefore valid.

A testator gave property to the Emmanuel Church Home, "to be kept as a separate fund to be called A. M. P. fund, and the income thereof used under their rules and in the discretion of said legatee, in assisting or maintaining poor respectable sewing girls or apprentices unable to pay over two dollars a week for their board or unable to pay anything." The purpose of that corporation, as expressed in its charter, is the aiding of deserving poor women and children. *Held,* that this legacy is for a purpose within the scope of the charter and is valid.

*Decided March 24th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Arthur W. Machen* and *Arthur W. Machen, Jr.* (with whom was *H. E. Baltzell* on the brief), for the appellants.

Mrs. Baltzell was the first of the two sisters to die. After her death, which occurred on the 24th day of March, 1892, the then trustees, Henry E. Baltzell and William H. Baltzell, filed a report, stating the gross value of the entire residuary or trust estate to be $173,425.46, and the net amount or balance for distribution, $172,425.46, and showing a division they had made of the latter into two equal parts. An order thereon was passed on the 18th day of December, 1903, ratifying the said division and confirming a certain auditor's account which had been stated; and directing "that the trustees under the will of the said Partridge retain one-half of the trust estate for the benefit of the continuing trusts under said will."

The Act of 1852, Ch. 231, confined the right to organize under its provisions to "free white persons, citizens of the United States and a majority of them citizens of this State." That the several incorporators possessed these qualifications were *jurisdictional* facts which the instrument of incorporation must show to give it validity.

At the hearing in the lower Court counsel for the Church Home and Infirmary introduced *parol* testimony, which the learned Judge received over the objection of the appellants.

The persons interested in the said Church Home and Infirmary were, perhaps, made aware of the existence of a defect in the incorporation; at any rate, the Act of the Legislature was procured at the session of 1858, which their counsel have produced and offered in evidence in this case as a legislative cure of any original infirmity. No diligence, we believe, in examination of indexes or tables of title would have enabled any *uninformed* searcher to find in the volume of the laws of 1858 any act relating to the said Church Home and Infirmary.

The title of this Act of 1858 is as follows: "An Act amendatory of an Act entitled an Act to provide for the formation of corporations for Moral, Scientific, Dramatic, Agricultural

or Charitable Purposes, etc., passed May thirteenth, eighteen hundred and fifty-two, Chapter two hundred and thirty-one."

The Constitution of 1851, Article 3, section 17, contained the provision, which has been retained in the subsequent Constitution, that "every law enacted by the Legislature shall embrace but one subject, and that *shall be described in the title."*

It is quite impossible, we submit, to allow any effect to this constitutional requirement and concede validity to the Act of 1858, Chapter 203. Its subject, whether taken as an amendment of the charter of the Church Home and Infirmary of the City of Baltimore, or as a legislative affirmance of the corporate existence of the institution, can, by no liberality of construction, be considered as *described in its title,* which title points to amendment of a general law and nothing else.

On behalf of the Church Home it is attempted to show that the objection of want of due incorporation under the General Law of 1852, Ch. 231, has been removed by subsequent legislative recognition.

Surely it would be unreasonable to hold that the Legislature can by merely *calling* a particular association a corporation make them really a corporation possessed of all the powers and capacities which under the general law a corporation organized under it would have. No decision—certainly no Maryland decision—goes to that extent. Thus the fact that the town of G. is referred to in an Act of Parliament as an incorporated borough does not make it such. *Rex* v. *Greene,* 6 A. & E. 548.

The law in this State upon this question is to be found in two cases: *Basshor* v. *Dressel,* 34 Md. 503; *Koch* v. *North Ave. Ry. Co.,* 75 Md. 221.

None of the Acts of Assembly offered in evidence in this case in the lower Court on the part of the Church Home fulfill the conditions recognized in *Basshor* v. *Dressel* and *Koch* v. *North Avenue Ry. Co.,* as requisite to justify the conclusion in a particular case that the legislative action *amending* a charter necessarily involved a conclusive presumption that the corporate charter so amended had legal validity.

The testator incorporates in his legacy to the Church Home and Infirmary particular provisions and directions which must be carried out if his declared intent is to be respected— the fund must be kept *separate,* the principal held intact, and the *income* to be applied in a prescribed manner. It is apparently conceded in the fourth paragraph of the answer of the Church Home and Infirmary that the gift for maintaining "*aged* and infirm persons" (the scope of the charter, as to maintenance, being restricted to "poor and distressed or sick persons") would avoid the gift, but the additional words in the legacy, "*or* in maintaining free beds in the infirmary in the discretion of said legatee," are relied upon to support the gift. But this suggestion does not meet the difficulty that the will prescribes that the *fund* itself must never be used for any such purpose, or any purpose, and must be *kept* by the legatee, kept as a *separate* fund—in perpetuity—the *income* only to be used—also in perpetuity—for the *specific* purposes stated.

(a) If, for the sake of argument, it be conceded that one of these purposes is a purpose within the scope of the corporate powers of the legatee, there is a *trust* to keep the principal and apply the income forever to that purpose. Full performance of this trust cannot be enforced without transgression of the Rule Against Perpetuities.

(b) A rule as to a trust imposed upon corporations capacitated for holding for such trust has been laid down by this Court in these words: "According to the uniform course of decisions in this State, a trust cannot be upheld unless it be of such a nature that the *cestuis que trust* are defined and capable of enforcing its execution by proceedings in a Court of Chancery." 56 *Md.* 397.

Applying this rule to this bequest, it is evident that the *cestuis que trust,* to claim the benefit of the application of the income of the fund "in maintaining free beds in their infirmary," are the class indicated by the testator, "aged and infirm persons." If there should be any diversion of the fund, they and they alone, the intended objects of the testator's

bounty, could apply to a Court of equity to enforce the trust. It is clear that according to the decisions in this State, such a class of beneficiaries is quite too indefinite to provide plaintiffs capable of acquiring a standing in Court to enforce performance of the trusts.

If resort be had to the provision or qualification in the will "in the discretion of said legatee," as capable of being construed to operate as well to select individuals for the use of free beds, and as well as to elect between the two allowed trusts, viz, maintenance in the Home and maintenance of free beds in the Infirmary, the trust in question is only made the more vague and uncertain and incapable of specific enforcement. The corporation would only need to make a complete diversion—make no selection of occupants of beds, to make the jurisdiction entirely nugatory for the enforcement of the trust.

(c) If the other alternative for the application of the income of the devise be taken as possible, and it be assumed that a *Home* (as distinguished from the Infirmary) used under the charter for the occupation of Poor and Distressed Persons, including the sick, would be capable of gratifying the testator's restricted provision for "maintaining aged and infirm persons in said Home," the present objection under the rule in *Church Extension of M. E. Church* v. *Smith,* 56 Md. 362, 397, applies to this case—the intended *cestuis que trust* are too indefinite and uncertain.

(d) In any case, the trust would be obnoxious to the Rule Against Perpetuities. *Missionary Society* v. *Humphreys,* 91 Md. 131.

The Church Home, if it be a corporation, under the Act of 1852, Ch. 231, by the instruments in evidence, is a religious corporation, and under the Constitution of 1851, Declaration of Rights, Art 35; Const. of 1867, Declaration of Rights, Art. 38, was and is incapable of taking the gift, the sanction of the Legislature not having been obtained. Mr. Partridge died on the 24th day of February, 1884; his will was proved on the 24th of April, 1884; and, as the agreed

statement of facts shows, "no sanction of the Legislature to the said legacy or devise has been obtained."

The Church Home and Infirmary denies that it is a religious corporation, and claims that the constitutional prohibition does not appdy. It is clear, we submit, that this pretension cannot be sustained.

The *name* is significant of its character; it is "The Church Home." In the body of the instrument it is made apparent that what is understood by "the Church" in this connection is the sect or denomination known as the Protestant Episcopal Church.

The corporate name may often be decisive in determining the character and powers of the corporation. *Crown Bank,* 44 Ch. D. 634; *Dorsey Harvester Revolving Rake Co.* v. *Marsh,* 7 Fed. Cas. 939.

From the whole, it is manifest that the Church Home and Infirmary is distinctly and positively a religious and sectarian institution, both in its name and organization. Its members and officers must all belong to the Protestant Episcopal Church; even the physician must be a communicant of that church; and the evident purpose is to provide and sustain a home for poor, sick or otherwise distressed persons belonging to that church. The amendment removes any ambiguity that might attach to the words "and others" in the original by reason of their position with reference to the context. And the general object, that both in management or direction and as to the reception of benefits it was to be purely and simply a Protestant Episcopal Church institution, stands out conspicuously from the entire instrument. It would be a departure from the evidently intended purpose, if the beneficiaries were not to be taken altogether from persons belonging to what is popularly known as the Episcopal Church. Such a limitation does not tend to disparagement in any way of the founders. Hospitals for the destitute sick in general, asylums for the poor without regard to sectarian bounds, are not uncommon; but this institution was to be a *Home* for the distressed and needy of the Protestant Episcopal Church, where they could

not only find relief for physical wants, but have offices of religion ministered to them according with their own religious belief and custom. "The approved agencies" of the Protestant Episcopal Church are provided, "to minister to their temporal and *spiritual* wants."

It is only necessary to institute a comparison between the two charters under consideration in *Bradfield* v. *Roberts,* 175 U. S. 291, and *Greer* v. *Colbert,* 200 U. S. 130, as expressed in the act to incorporate Providence Hospital (175 *U. S.* 296, note), and the act to incorporate Georgetown College in the District of Columbia (6 *Stat. at L.* 912), and the charter, now in question, of the Church Home and Infirmary, to perceive how worldwide is the difference between them. The Providence Hospital and Georgetown College charters are absolutely free from any church or sectarian reference; on the other hand, the charter of the Church Home and Infirmary speaks in almost every line of the Protestant Episcopal Church, requires that all its officers and managers shall be members and communicants of that church, its beneficiaries primarily—by a fair construction probably, exclusively, are to belong to that church; it promises to provide not merely for their temporal, but for their *spiritual wants;* its Church Home is provided with a rector who must be a minister of the Protestant Episcopal Church in good standing; and the bishop of the diocese of the Protestant Episcopal Church in which the City of Baltimore, the habitat of the Church Home, is situated, is constituted *ex officio* visitor of the Church Home— in short, the entire management is to be in the hands of the clergy and laity of that church, and prominence is given throughout to the religious and sectarian character of the institution.

The devise to the Emmanuel Church Home is evidently creates a *trust,* the *cestuis que trust* being defined as "poor respectable sewing girls or apprentices unable to pay over two dollars a week for their board or unable to pay anything." Any provision of this sort, that the income of an estate or fund bequeathed to a corporation competent to receive, is to

be applied by it for the benefit of particular persons, is equivalent to an expressly declared trust to appropriate the income in that way. So such a case has always been treated, from *Dashiell* v. *The Attorney-General*, 5 H. & J. 392; *Dashiell* v. *Attorney-General*, 6 H. & J. 1, the two cases founded on the will of James Corrie, down to the latest that have come before this Court.

The question then is, conceding the legatee or trustee to have capacity to administer a valid trust, is the *trust* in the present instance such as can be sustained as free from objection in law and capable of enforcement in a Court of Equity?

The first subject of inquiry is, who constitute the beneficiaries, or intended *cestuis que trust?* Who are meant to be designated by "poor respectable sewing girls or apprentices unable to pay over two dollars a week for their board, or unable to pay anything," in the "assisting or maintaining" of whom, the income of this trust is to be used? We submit that the beneficaries thus indicated are altogether too uncertain for legal ascertainment, and that the devise must for this reason fail utterly. *Dashiell* v. *Attorney-General*, 6 H. & J. 1.

The appellees, in an endeavor to meet the strong array of authorities, commencing with *Dashiell* v. *Attorney-General*, 6 H. & J. 1, going to show that the *trusts* in the will of Mr. Patridge are void for uncertainty, cite and rely upon some decisions of this Court in which the distinction has been made in favor of certain contested bequests that were either evidently intended to be gifts for the general purposes of the corporation legatee, or where the specification made was merely a recognized specific function of the corporation pointed out by the testator, who, however, showed no intent to impose the duties of a trustee upon the legatee in connection with it.

The most notable instances of the latter also are cases of bequests to churches pointing to a well-defined branch of church work, as payment of pastor's salary, maintenance of Sunday School or Bible class, missionary work or the like.

·Cases of this kind are quite distinguishable from such a trust, for example, as we find in the present case for the maintenance or assistance of "poor respectable sewing-girls or apprentices unable to pay two dollars a week for their board or unable to pay anything."

Thus, in what may be regarded as a leading case under this head, *Eutaw Place Baptist Church* v. *Shively,* 67 Md. 493, the Court in affirming a legacy given to the church for Sunday School purposes, said: "The Sunday School as such is not an incorporated body, it is true; but it is shown to be an integral part of the church organization, and therefore embraced within the scope of the corporate work and functions of the church." But in *Trinity M. E. Church* v. *Baker,* 91 Md. 539, the Court had no difficulty afterward in refusing to sustain a bequest to Trinity Church corporation of a sum of money upon trust to pay the income to the Trinity Auxiliary of the Women's Foreign Missionary Society, to be applied to a general mission·fund.

The cases in this State without a single exception hold that a bequest in trust for indefinite *cestuis que trust* is·void, and that it makes no difference that the trustee is a corporation with corporate power to execute the trust. There is no exception or qualification to this rule. There is, however, as just stated, a collateral doctrine, that a bequest to a corporation for its own benefit, to be applied in carrying out its corporate purposes, is not void because the execution of the objects of the corporation may incidentally benefit an indefinite class of persons. In such cases, directions as to the manner of using the property are not regarded as trusts, any more than a direction annexed to a bequest to an individual to use the money in paying his board would be regarded as a trust for the benefit of his landlady. The only question is whether the testator intended that the corporation should enjoy the property for its own benefit, incidentally benefitting other persons, or whether he intended that the corporation should be a mere trustee, or conduit-pipe, to carry the fund to the objects of his bounty, an indefinite class of *cestuis que trust.* Is

the object to benefit the corporation by enabling it to carry on its work, or is it to benefit an indefinite class of *cestuis que trust?*

The present case undoubtedly falls within the latter category. By Mr. Partridge's will not a dollar of this fund went to the corporation beneficially. Not a dollar of it could be applied in renting its offices, or in paying the salaries of its officers. "Poor respectable 'sewing-girls," and they alone, are the objects of the testator's bounty. The Emmanuel Church Home, which is a mere paper corporation, cannot apply this fund in establishing itself as a going concern. If it is faithful to the trust reposed in it by the testator, it must apply every dollar of the income to "poor respectable sewing-girls." Being a mere paper corporation without any established work, it is impossible for it to show by evidence, as was done in the cases relied upon by the appellees, that the objects for which the testator has directed the fund to be applied constitute a well-defined, integral part of its corporate work.

Other cases cited by the appellees, as *Barnum* v. *Mayor and C. C. of Baltimore,* 62 Md. 275; *Domestic and Foreign Missionary Society* v. *Gaither,* 62 Fed. R. 422; *Peter* v. *Carter,* 70 Md. 140; *Halsey* v. *Convention,* 75 Md. 275; *Hanson* v. *Little Sisters of the Poor,* 79 Md. 434; *Erhardt* v. *Baltimore Monthly Meeting,* 93 Md. 669; *Doan* v. *Ascension Parish,* 103 Md. 662, all fall within the class of gifts to a corporation, where the only beneficiary is the corporation, coupled with a direction as to how the gift is to be applied by the corporation, for its own benefit and for its own corporate purposes, and not for the benefit of any other persons. In those cases the gift was sustained, not because a trust for indefinite persons is any the more effectual if the trustee is a corporation endowed with corporate capacity to dispense such charities, but because there was no *cestui que trust at all.* If there were *cestuis que trust,* but they were an undefined and indefinable class, the gift would be invalid.

*Women's Foreign Missionary Society* v. *Mitchell,* 93 Md. 199, relied upon by the appellees, is for the same reason dis-

tinguishable.    There the money was directed to be used in
educating Bible readers in India, but not for the benefit of
the Bible readers.    The Bible readers were to be educated in
order to carry on the work of the corporation.    The benefit
to the readers was entirely incidental.    In our case, the sew-
ing girls unable to pay more than $2 a week are the *objects
of the testator's bounty;* the benefit to them is not incidental,
but is the one purpose the testator had in mind.

A sufficient reason for declaring invalid the bequest to the
Church Home and Infirmary, as well as that to the Em-
manuel Church Home, is that in both instances there is a
total *defect of evidence* tending to show that the purposes for
which the bequests are respectively given constitute well-
defined, recognized, integral parts of the corporate work.    In
the cases relied upon by the appellees—such as *Shively* v.
*Eutaw Baptist Church,* 67 Md. 493; *Halsey* v. *Convention,*
75 Md. 275; *Erhardt* v. *Baltimore Monthly Meeting,* 93 Md.
669; *Hanson* v. *Little Sisters of the Poor,* 79 Md. 434—
testimony of the corporate officers was offered to show what
was in fact carried on as an integral part of the work.    In
*Trinity Church* v. *Baker,* 91 Md. 539, 567, one of the be-
quests was held invalid expressly because of the lack of any
testimony to show that "The Trinity Auxiliary of the Wom-
en's Foreign Missionary Society of the Methodist Episcopal
Church" was an integral part of the work of Trinity M. E.
Church.    In the present case, although the appellees offered
some parol evidence, yet none of it bore even remotely on
this point.    The Church Home and Infirmary has altogether
failed to prove that free beds exist in its home or constitute
any recognized part of its work, or that the maintenance of
the *aged* is a specific part of its enterprise.    And of course,
the Emmanuel Church Home, being a mere nominal corpora-
tion, has not proved and could not prove that the support of
poor respectable sewing girls unable to pay more than two
dollars a week for their board, or unable to pay anything, con-
stitutes any part of its work.    In fact, that corporation has
no work, but is a mere paper organization.

· As already stated, the segregation of one-half of the trust estate for division at Mrs. Baltzell's death certainly did not *necessarily* involve a determination of the validity of the charitable bequests in remainder of the other half of the estate which was to remain in trust so long as Mrs. Woodside should live; and certainly it will hardly be contended by the other side that any such question was *actually* raised.

But the law is well settled that a decree operates as *res judicata* only as to questions which were *necessarily* involved in the decision; and that as an *estoppel* a decree is conclusive upon those questions only which were actually raised, argued, considered and deliberately decided. *Trayhern* v. *Colburn;* 66 Md. 277; *Russell* v. *Place,* 94 U. S. 606; *McCall's Lessee* v. *Carpenter,* 18 How. 297; *Shryock* v. *Hensel,* 95 Md. 614,

*Edward Guest Gibson* and *George Weems Williams,* for the Church Home and Infirmary, appellee.

. As the trustees in this case, all the parties in interest assenting, had already asked the Circuit Court for its instruction; and Court had passed the order directing them to hold the balance in their hands for two purposes, namely to afford an income for the surviving sister and at her death to divide, pay over and distribute that balance to the two legatees, the Church Home and Infirmary of Baltimore City and the Emmanuel Church Home in the City of Baltimore from which no appeal was taken, the matter is now *res adjudicata.* The other legatees having received their benefit by such division and after these years are now endeavoring to put another and a different construction on Mr. Partridge's will and this they cannot and should not be permitted to do.

Even if the narrow construction of the provision of the Church Home's charter, sought to be placed thereon by the appellants, should be adopted, yet the issue is not so much what is the literal accurate construction of the charter as what is the character of the work being done by the Church Home, and is it such as to embrace the objects of the gift, and upon this issue the Church Home must prevail.

Before examining whether the first alternative contained in the gift; namely, that the income thereof be used "in maintaining aged and infirm persons in said Home" is comprehended in the objects of the Church Home as set forth in its amended charter, to wit, "to provide and sustain a Home for the sick as well *as other distressed persons,*" let us consider what would be the situation assuming that the accomplishment of the first alternative of the gift is outside of the sphere and function of the institution and is for that or any other reason invalid and assuming as we think has been conclusively shown that the accomplishment of the last alternative object of the gift is within the sphere and function of the Church Home and valid in every respect. We would thus have presented a case wherein a legacy was left to an institution with directions to apply the income therefrom to object A or to object B *in the discretion of the legatee.* If in the supposed case the income could not be *legally* applied to object A the legacy would not fail to take effect if the application of the income could lawfully be made to object B, because the intent of the testator is gratified by the application of the income to either object, and the choice of objects being entirely in the discretion of the legatee it will not be presumed that such legatee will make an illegal application when a legal application can be made. *University of London v. Yarrow,* 1 De G. and J. 72.

In *St. Paul's Church* v. *Attorney-General,* 164 Mass. 188, 195, the Court said: "But it is settled by a long line of decisions in England, that where trustees are given discretion to apply a fund either to a legal or an illegal object, the law forbids them to apply the fund to the illegal object and the trust is valid for the legal object."

See also—*In Re Hedgman,* 8 Ch. Div. 156; *Lewis* v. *Allenby,* L. R. 10 Eq. 668, 670, where the following words of LORD HARDWICK are quoted: "If a devise is in the disjunctive and leaves the executors to two methods to do a particular thing by the one lawful and the other prohibited by law, can any Court say, because one method is unlawful, that

therefore the other is so too, and the whole bequest void? No; for if one method is lawful, that shall be pursued and take effect." See also—*In Re Piercy,* 1 Ch. (1898) 565; *Chapman* v. *Brown,* 6 Vesey, Jr. 404, 407; *Jackson* v. *Phillips,* 14 Allen, 539, 556; *Beurhaus* v. *Cole,* 94 Wis. 617, 628; *Webster* v. *Morris,* 66 Wis. 366.

But a fair and reasonable construction of the provisions relating to the corporate purpose of the Church Home as set forth in the amended certificates of incorporation, to wit, "to provide and sustain a Home for the sick as well as other distressed persons," does not support the contention of the appellants that the Church Home would be without corporate power or capacity to carry out the first alternative object of the gift, to wit, the use of the income from the gift, "in maintaining aged and infirm persons in said Home." In brief, we contend that the phrase "other distressed persons" as used in the amendment to the charter of the Church Home, should be taken to mean and include all persons other than the sick in a state of suffering or trouble, calamity, adversity, affliction, misery arising from want or misfortune. "Aged and infirm persons" would certainly fall within the class of "distressed persons," as thus defined.

The direction of a testator to hold or invest the property bequeathed or devised and to use the income therefrom for a certain designated purpose and thereby make and hold the principal of the gift as a "separate fund," does not affect the validity of a gift. *England* v. *Prince George's Parish,* 53 Md. 466; *Eutaw Place Baptist Church* v. *Shively,* 67 Md. 493; *Peter* v. *Carter,* 70 Md. 140; *Halsey* v. *Convention of P. E. Church,* 75 Md. 275; *Erhardt* v. *Balto. Monthly Meeting of Friends,* 93 Md. 669; *Ege* v. *Hering, Executor, etc.,* 108 Md. 391.

No trust was created by the testator, and that the bequest is an absolute gift to the Church Home to be used in its discretion in carrying forward certain designated branches of its work plainly within the sphere and function of its corporate powers and activities. *Ege* v. *Hering, Executor,*

*supra,* 108 Md. 391; *Woman's Foreign Missionary Soceity*
v. *Mitchell,* 93 Md. 199; *Erhardt* v. *Baltimore Monthly
Meeting,* 93 Md. 669; *Bennett* v. *Humane Imp. Society,* 91
Md. 10; *Trinity M. E. Church* v. *Baker,* 91 Md. 539; *Pratt*
v. *Sheppard Hospital,* 88 Md. 610; *Hanson* v. *Little Sisters
of the Poor;* 79 Md. 434; *Eutaw Place Baptist Church* v.
*Shively,* 67 Md. 493; *Domestic Miss. Soc'y* v. *Gaither,* 62
Fed. Rep. 422.

While the members of the Church Home and Infirmary
other than the original incorporators must be chosen from the
clergy and laity of the Protestant Episcopal Church, and
while the members of the body may elect a rector, warden,
chaplain and physicians who must be members of the Protes-
tant Episcopal Church, the object of the body is to provide
and sustain a home for the sick as well as other distressed
persons, without regard to their religious belief and without
regard to their spiritual needs.  *Colbert* v. *Speer,* 24 Appeal
Cases, D. C., 187, 200; affirmed on appeal in 200 U. S. 130.

*Joseph Packard* and *Charles McH. Howard* (with whom
was *James M. Ambler* on the brief), for the Emmanuel
Church Home, appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for
Baltimore City declaring that the devises and bequests in the
will of James R. Partridge, of one-half of the residue of his
estate to the Church Home and Infirmary of Baltimore City
and to the Emmanuel Church Home of Baltimore City, equal-
ly, are lawful and valid, and directing the trustees under the
will to transfer and deliver the real estate and other property
held by them to those institutions, together with the income
accrued and collected since the death of Margaret R. Wood-
side, the life tenant.

After making some legacies, the testator left the residue of
his estate to trustees, with direction to divide the income into
two equal parts, and to pay one-half to his sister, Mrs. Balt-

zell, during her life, and the other half to his sister, Mrs. Woodside, during her life. Upon the death of either of his two sisters, he directed the trustees to divide the whole trust fund then in their hands into two equal parts—one part to remain in their hands as trustees to afford an income to the survivor of his two sisters, and the other half to be distributed, as therein directed, to certain nephews and nieces. He then directed the trustees on the death of the survivor of his sisters, to divide the half remaining in their hands into two equal parts and to distribute and pay over the same as follows:

"One-half or part to the Church Home and Infirmary of Baltimore City, to whom I give and bequeath the same to be kept by said legatee as a separate fund in remembrance of my wife and daughter, and the income thereof used in maintaining aged and infirm persons in said home or in maintaining free beds in their infirmary, in the discretion of said legatee, and to pay over the remaining part or half (of the half of the whole) to the Emmanuel Church Home in the City of Baltimore, to whom I give and bequeath the same, to be kept as a separate fund, to be called the 'Annie Mary Partridge Fund,' and the income thereof used under their rules and in the discretion of said legatee in assisting or maintaining poor respectable sewing girls or apprentices, unable to pay over two dollars a week for their board, or unable to pay anything. This also in remembrance of my wife and daughters."

As there are some questions concerning the bequest to the Church Home and Infirmary which are not involved in the other, we will first consider it, although in doing so, we will refer to and discuss some cases which are applicable to both.

1. The validity of its incorporation is attacked, because it is not shown in the certificate that the seven incorporators were "free white persons, citizens of the United States and a majority of them citizens of this State." The Act of 1852, Ch. 231, under which it undertook to be incorporated, did authorize seven or more such persons to be associated for the

purposes named in the Act, but while the proper practice was to describe the incorporators, so as to show that they were such as the statute authorized, we do not think the omission to do so made the charter invalid. The Act did not in terms require them to be so described in the certificate, but it said in reference to what shall be therein stated: "It shall and may be lawful for such persons to prepare and execute, under their hands and seals, an instrument of writing, specifying therein the objects, articles, conditions and name, style or title under which they have associated, or mean to associate, and the same to exhibit and present to the judge of the Circuit Court for the county or the Judge of the Superior Court of Baltimore City, as the case may be, in which said corporation is intended to be situated, or its principal business transacted." It then provided that the instrument of writing should be acknowledged before and certified by the Judge in the same manner as conveyances of real estate were by the laws of this State required to be. The judge was also required to direct it to be recorded in the office for the recording of deeds in the county or city. It was undoubtedly the duty of the judge to satisfy himself that those presenting the instrument to him were such persons as were authorized to be so incorporated, but the mere fact that they did not so state in the charter does not make it invalid. If the incorporators of a proposed corporation stated in such instrument of writing that they were such persons as the act prescribed, when in fact they were not, the statement would not prevent the charter from being forfeited, and it would seem to be equally clear that a charter should not be invalidatd by the mere omission to state such facts. So without regard to the statutes cited, which are said to have since recognized the appellee as a corporation, we are of the opinion that the omission spoken of did not make the charter invalid.

2. A further objection is made to this bequest on the ground that the thirty-eighth section of the Declaration of Rights (requiring the sanction of the Legislature to certain gifts, sales or devises) has not been complied with. It therefore becomes

necessary to determine whether it is such a corporation as
that provision is applicable to.

It is clear that the Act of 1852, Ch. 231, under which this
appellee was incorporated, was not intended for the incorpora-
tion of religious corporations. It authorized the association
"for any moral, scientific, literary, dramatic, agricultural or
charitable purpose, or for the purpose of forming any uniform
volunteer company, fire engine or hose company, or beneficial,
benevolent or musical society or association." Religious cor-
porations were authorized by the Act of 1802, Ch. 111, and
other Acts which might be referred' to, and while such cor-
porations are in a sense corporations for charitable purposes,
all "charitable corporations" are not "religious corporations."
The provisions in the Act of 1852 above referred to were con-
tinued in sections 10-17 of Art. 26 of the Code of 1860, while
sections 88-101 of that Article were applicable to "religious
corporations." The Code of 1904 still provided for a method
of incorporating the latter different from what are known as
charitable corporations, and indeed the Act of 1908, Ch. 240,
which made much radical changes in our corporation laws,
has left undisturbed the sections in the Code of 1904, in ref-
erence to the formation of religious corporations. We refer
to those provisions to show that our corporation laws have
consistently recognized the distinction between such corpora-
tions as the appellee professes to be and those known as reli-
gious corporations, although, of course, a corporation would
not be permitted to evade this provision in the Declaration of
Rights by calling itself something other than what it really is,
or merely by having itself incorporated under one provision
of the law rather than another.

The mere fact that a corporation is under the control of
members of a particular church does not make it a religious
corporation. In *State* v. *Board of Trustees*, 175 Mo. 52 (S.
C. 74, S. W. Rep. 990), the Act there in question provided
that: "An institution of learning is hereby authorized and
established in or near the town of Fulton, Callaway County,
to be known as 'Westminster College,' and in all its interests

to be under the care and control of the Synod of Missouri, in connection with the General Assembly of the (Old School) Presbyterian Church in the United States of America." Trustees were named in the Act, the power to appoint their successors was given to the Synod of Missouri, and the trustees were given the power to appoint the faculty, prescribe the course of study, confer academic degrees, etc. The charter was attacked as being in violation of the Constitution of Missouri of 1820, which ordained that "no religious corporation can ever be established in this State." The Court said: "The sum of the argument is that, because the Synod of the Presbyterian Church in Missouri is given the care and control of the interests of the corporation and the appointment of the trustees, it is therefore a religious corporation. A corporation established for purely academic purposes, for education in literature and in the arts and sciences, is in no sense a religious corporation, even though it be given into the care and under the mânagement of a religious body." Again it was said: "The argument is that, if the religious society has the selection of the teachers and the management of the college affairs it is enabled to propagate its religious tenets in the youth who come within its influence. But that is an incident of which the law takes no account. It does not charter the corporation to teach religion, but to educate in literature, arts and sciences; and if while a youth is receiving such education he is brought under the influences of a particular religion, the law has no concern with that incident. A corporation, for its character, is to be judged by the objects of its creation, as expressed in its charter." It was also held in Missouri that a corporation might lawfully be formed, under its statute regarding fraternal beneficial societies, which limited its membership to members of a particular church and that such was not a religious corporation. *Franta* v. *Bohemian Roman Catholic Cent. Union,* 164 Mo. 304 (S. C. 54 L. R. A. 723). See also *Colonization Society* v. *Hennessy,* 11 Mo. App. 555; *In re Fay's Estate,* 76 N. Y. Supp. 62; *In re Watson's Estate,* 171 N. Y. 256 (S. C. 63 N. E. 1109).

But the case which is perhaps most analogous to this is that of *Colbert* v. *Speer,* 24 App. Cas. (D. C.) 187. JUDGE ALVEY delivered the opinion. The Court was considering a devise and bequests to the Georgetown College, which were objected to because it was contended they were intended to be "for the support, use and benefit of a religious sect, order and denomination, and to a public teacher of the Gospel as such." As the Maryland Declaration of Rights was in effect in the District, the decision is peculiarly applicable. The Court said: "The fact that the college is or may be under the administrative control of a religious order known as the Order of Jesus does not bring the institution within the prohibition of the Declaration of Rights. The college is not a religious institution intended for the tuition and propagation of a particular doctrine and creed of religious belief, to the exclusion of all other creeds and beliefs, but it is an institution of learning for the admission and education of students of all denominations of religious faith. The act of incorporation of the college does not limit the exercise of the corporate powers conferred to the promotion of any religious creed or denomination, but the college is open to all alike. For limitations of the powers and objects of the college we must look to the charter granted by Congress, and not elsewhere." JUDGE ALVEY quoted at length from *Bradfield* v. *Roberts,* 175 U. S. 296, which involved an appropriation by Congress for the erection of hospital buildings, a part of which was about to be applied to the erection of a building at Providence Hospital, which was under the auspices and control of an order of sisterhood of the Roman Catholic Church, and it was alleged that the title to the hospital's property was vested in the Sisters of Charity of Emmitsburg, Md. It was objected to on the ground that it was in violation of the Constitution of the United States that "Congress shall make no law respecting an establishment of religion." The Supreme Court in that case said: "Assuming that the hospital is a private eleemosynary corporation, the fact that its members, according to the belief of the complainant, are members of a monastic order or

sisterhood of the Roman Catholic Church, and the further fact that the hospital is conducted under the auspices of said church are wholly immaterial, as is also the allegation regarding the title to its property. The statute provides as to its property and makes no provision for its being held by anyone other than itself. The facts above stated do not in the least change the legal character of the hospital, or make a religious corporation out of a purely secular one, as constituted by the law of its being. Whether the individuals who compose the corporation under its charter happen to be all Roman Catholics, or all Methodists, or Presbyterians, or Unitarians, or members of any other religious organization, or of no organization at all, is of not the slightest consequence with reference to the law of its incorporation; nor can the individual beliefs upon religious matters of the various incorporators be inquired into. Nor is it material that the hospital may be conducted under the auspices of the Roman Catholic Church. To be conducted under the auspices is to be conducted under the influence or patronage of that church. The meaning of the allegation is that the church exercises great and perhaps controlling influence over the management of the hospital. It must, however, be managed pursuant to the law of its being."

The case of *Colbert* v. *Speer,* was affirmed in *Speer* v. *Colbert,* 200 U. S. 130, where it was said the reasoning set forth in the opinion of the lower Court was entirely satisfactory and concurred in.

The charter of this appellee recites that at a meeting of the contributors of an institution called the Church Home for the Relief of the Poor and Destitute, it was resolved that the trustees theretofore charged with the collection of the fund be appointed to continue their work and to manage and enlarge the fund: "*Resolved,* That they have power to add to their number from among the clergy and laity of the Protestant Episcopal Church and that they are authorized to fill vacancies occurring in their body." It states that they were desirous of availing themselves of the provisions of the Acts of

1852, Ch. 231, for the formation of corporations for charitable purposes.

In Art. 1 the name of the corporation is given, which was to be composed of seven persons named, "together with such clergy of the Protestant Episcopal Church, resident in the City of Baltimore and laymen of the same as contributing to its funds and having been elected thereunto shall sign this constitution." Art. 2 is as follows: "The object of this body shall be to provide and sustain a home for poor and distressed persons belonging to the Protestant Episcopal Church and others, and through the Ladies' Church Home Society or other approved agencies to minister to their temporal and spiritual wants." Art. 5 provides for "the election of a rector of the Church Home, who shall hold his office for the ensuing year, and no person shall be elected to the office unless he is a minister of the Protestant Episcopal Church in good standing in the same;" and Art. 6 provides that the bishop of the diocese shall be *ex officio* visitor of the Church Home.

In 1857 the charter was amended changing the name to the present one and providing "that the second article be so amended as to declare more explicitly in accordance with the design upon which the society was founded, that the object of the body shall be to provide and sustain a home for the sick as well as other distressed persons." The fifth article was amended so as to provide for the election of a rector, warden, chaplain, physicians or any other officers whom they may deem necessary, and providing that no person should be chosen to any of said offices unless he be a communicant of the Protestant Episcopal Church, and if chosen rector or chaplain shall likewise be a minister of said church.

We have thus referred to the portions of the charter most relied on by the appellants, but it would seem to be clear, under the authorities above cited, that none of those provisions, nor all together, can convert into a religious corporation what on the face of the charter is shown to be intended to be a corporation for charitable purposes, under the Act of 1852. Art. 2 of the charter perhaps gives more foundation for the claim of

the appellants than any other part of it, but that provides: *"And through* the Ladies' Church Home Society or other approved agencies to minister to their temporal and spiritual wants."

By the charter itself it is shown that the charitable purposes were not to be confined to those belonging to the Protestant Episcopal Church, but to them "and others." It certainly would not make a hospital a religious corporation by having a chaplain, or a rector, and authority to call in the Ladies' Church Home Society (whatever that was), or other approved agencies, to minister to the temporal and spiritual wants of the poor, sick and other distressed persons ought not to determine this to be a religious corporation.

Some institutions of a like character, admittedly of a purely secular nature, have chaplains and even chapels in which to hold religious services for the benefit of the inmates, but simply because the spiritual wants of the sick and other distressed persons are also ministered to cannot convert the institution into a religious corporation. If, as was said by JUDGE ALVEY: "The fact that the college is or may be under the administrative control of a religious order known as the Order of Jesus does not bring the institution within the prohibition of the Declaration of Rights," or if, as was said by the Supreme Court, the fact that the members of the corporation (Providence Hospital) "are members of a monastic order or sisterhood of the Roman Catholic Church and the further fact that the hospital is conducted under the auspices of said church are wholly immaterial," surely it cannot be logically said that because the officers of this corporation are by its charter required to be either ministers or laymen of the Protestant Episcopal Church, it is converted into a religious corporation, although it would not have been if those provisions had been omitted from the charter, notwithstanding such qualifications were in fact required.

It would be a manifest evasion of the provisions of the Declaration of Rights to permit a corporation to be formed for such purposes as this was and avoid the application of that

provision simply by leaving out of the charter such provisions as we have referred to, if it would be applicable, if they were inserted.

This is not a gift to a religious sect, order or denomination, but it is to a corporation organized for charitable purposes, although controlled by the members of a particular sect. The corporation can be required to carry out the objects and purposes of its incorporation as expressed in its charter. The charitable work for which it is organized is not limited to members of the Episcopal Church, but is distinctly declared to be for them and others. The object of the corporation, as expressed in its charter, is to provide and sustain a home for the sick and other distressed persons, which purposes are clearly those of a charitable, as distinguished from a religious corporation under our corporation laws. As well might it be said that a relief association organized for the relief of the employees of a railroad company was a railroad corporation if the membership and officers were limited to such employees, or that an insurance company limited to insuring officers and employees of banks was for that reason a banking corporation, as to hold this to be a religious corporation by reason of the provisions of the charter above referred to. We can see a possible reason why the membership of a charitable organization such as this cannot be confined to the clergy and laity of a particular church, and, if so confined, why it must necessarily be said that a gift to it would be a gift to a religious sect, order or denomination. The provision in the Declaration of Rights cannot and ought not to be ignored when applicable, but it ought not to be unnecessarily extended beyond its object and language. We are of the opinion that it is not applicable to this appellee.

3. It is contended by the appellant that the provision in the will for this corporation created a trust; that the class of beneficiaries is too indefinite and that the trust is obnoxious to the Rule Against Perpetuities. In the first place, the testator gave and bequeathed the one-half of the property in controversy to the *Church Home and Infirmary* itself, and not to it

as trustee for others. The fact that it is directed to be kept as a separate fund, and the income to be used for the purposes named, can make no difference, provided those purposes, or some of them, be within the object of the appellee's incorporation. The latest case on the subject involved a gift to this same corporation and answers the contention of the appellants as to its being kept as a separate fund, as well as some other objections to this bequest. In *Ege* v. *Hering*, 108 Md. 391, the will of Miss Sallie Longwell was under consideration. There the gift was to this appellee "to endow a bed according to the custom and purpose of that institution," and it was held to be valid. To "endow a bed" unquestionably contemplated the fund being held separate and the income applied to maintaining that bed, and JUDGE SCHMUCKER, in delivering the opinion of the Court, said: "The mere fact that it was, by the terms of the will, to be applied to a particular, clear and well-defined object plainly within the sphere and function of the institution, has been several times held by us not to avoid a gift which could have been made to the same institution for its general corporate purposes"—citing *Eutaw Baptist Church* v. *Shively*, 67 Md. 494; *Halsey* v. *Convention of P. E. Church*, 75 Md. 275; *Hanson* v. *Little Sisters of the Poor*, 79 Md. 434, and *Woman's For. Miss. Soc:* v. *Mitchell*, 93 Md. 199. See also *England* v. *Vestry*, 53 Md. 466; *Erhardt* v. *Balto. Monthly Meeting of Friends*, 93 Md. 669.

It is difficult to understand how it can be said that "maintaining aged and infirm persons in said home or in maintaining free beds in their infirmary in the discretion of said legatee" is not in accord with the spirit, if not the very letter, of this charter.

Especially is this so when the Act under which it was granted authorized such a corporation to hold any kind of property and to employ, use and dispose of it "according to its articles, objects and conditions of its charter, or according to its articles and by-laws, or in case of a devise or bequest, according to the will and intention of the donor, if the same be

lawful and within the proper objects and powers of the said corporation." We have no doubt that maintaining aged and infirm persons is within the objects and powers of the corporation, but if that could be disputed certainly maintaining free beds in the infirmary is. We do not suppose it will be questioned that if a bequest is made to a legatee for either of two purposes, in the discretion of the legatee, and one of them is lawful, and the other not, that the bequest is valid for the lawful one. A number of cases are cited to that effect in the brief of the appellee, but we will not here refer to them.

It would serve no good purpose to compare the decisions elsewhere with those made by our predecessors in *Dashiell* v. *Attorney-General,* 5 H. & J. 392, and 6 H. & J. 1. Those cases have been too frequently, and too recently, recognized by us to permit us to disturb them, if we were inclined to do so, but there must be *a trust* which is uncertain as to the beneficiaries, or which creates a perpetuity, in order to justify the Court in striking down a devise or bequest, unless, of course, there be other reason for doing so. The cases in this State fully establish the doctrine, that when property is left to a corporation for such uses as are within the scope of its corporate purposes, or the objects to which the gift is to be applied are such as the corporation was organized for, then such gift cannot be declared invalid on the ground that it was in trust for indefinite objects, or in conflict with the rule against perpetuities, unless the intention to create a trust be clear. If this were not so, it would be useless to organize charitable corporations of the character of these appellees, for what we are now considering applies to both.

In *Eutaw Place Baptist Church* v. *Shively, supra,* it was contended that, as the Sunday school was an unincorporated body, the bequest to the church "to be applied to the Sunday school belonging to or attached to said church" was in trust for an undefined and uncertain body of individuals, who changed from time to time, and consequently the bequest was void because of that uncertainty and want of legal identification of the objects to be benefited. But the Court declined to con-

cur in that contention and said that the Sunday school was
an integral part of the church organization, "and therefore
embraced within the scope of the corporate functions and
work of the church," and the bequest was capable of being
enforced.

In *Halsey* v. *Convention of the P. E. Church, supra,* the
Court said: "The statute of 43 *Elizabeth* in regard to chari-
ties is not, it is true, in force here, but it is well settled that
a Court of chancery has jurisdiction, independent, altogether
of the statute, to enforce a trust for charitable and religious
purposes, provided the devise or bequest be made to a person
or body corporate capable of taking and holding the property
so devised and bequeathed, and provided, further, the object
and character of the trust be definite and certain." The two
cases last cited are quoted and affirmed in *Hanson* v. *Little
Sisters of the Poor, supra.* See also *Peter* v. *Carter,* 70 Md.
139. The "Trust" referred to in those cases is of the char-
acter that requires all such corporations to hold their prop-
erties for the purposes for which they are authorized to use
them under their charters.

In *Bennett* v. *Humane Imp. Soc.,* 91 Md. 10, where prop-
erty was given to two charitable corporations "provided the
trustees and managers of said homes admit and receive into
said homes during the existence or continuance of said homes
one aged man or one aged woman each and every year for
each and every four hundred dollars of the income * * *,
and provided also that such aged person so to be admitted shall
have always through life maintained a good moral character
and that his or her penury shall not have been the result of
his or her vicious or immoral conduct," it was held not to
create a trust as to the use of the property when it appeared
from the whole will the testator did not intend to create a
trust, and when if a trust should be established the entire
gift would be defeated, and that such a society takes the
property to be given for its general corporate purposes, sub-
ject to what was decided to be a condition subsequent. It
was held that that will did not create a trust and that conse-

quently the devise was not void, either for uncertainty as to
the beneficiaries or in creating a perpetuity.

In *Trinity M. E. Church* v. *Baker,* 91 Md. 539, a number
of devises and legacies were considered, some of which were
held to be trusts and void for uncertainty, but we will refer to
two which were sustained. The testatrix gave to the trustees
of the Randolph-Macon College, a corporation, a bequest of
$4,200 "to be applied to aid deserving and promising young
women, especially such as expect to enter upon mission work,
to attend the Randolph-Macon Woman's College, at Lynch-
burg, as students, such aid to be either by loans or free
scholarships, as said trustees may deem best," and also $800
to the same corporation, "for the education of one or more
worthy girls." The Court held those two bequests to be valid,
because the legatee was an incorporated body having for its
object the education of the young, and the evidence showed
that a part of its work was carried on through the agency of
the Randolph-Macon Woman's College, at Lynchburg. It
was said of the first mentioned bequest: "It is not given as a
trust, as has been contended, but it is dedicated by the testa-
trix to an object entirely within the general scope of the ob-
jects and purposes of the corporation. That the testatrix in-
dicated the particular use to which the fund is to be applied
does not invalidate the gift," and the Court declared that the
other was valid for the same reason.

In *Woman's For. Mis. Soc.* v. *Mitchell,* 93 Md. 199, the
testatrix directed certain property to be sold "and the pro-
ceeds thereof, together with whatever monies I may die pos-
sessed, be held in trust by the Board of Managers of the
Foreign Missionary Society of the Methodist Episcopal
Church of the United States of America for the following
purposes: After all my debts, bequests and provision for my
burial, etc., be paid, that sufficient be used to educate as Bible
readers in India six girls * * *; the money remaining
after that set aside for education of the aforesaid Bible read-
ers to be applied to the purchase of a building to be used for
the education of girls in India to be called the 'M. Adelaide

Sherman Home,' and the location of said building to be left to the decision of Bishop Thoburn or his successors." The late CHIEF JUDGE McSHERRY said: "Now, perhaps, had the precise phraseology, which is found in the will before us, been used in making a like devise and bequest to a natural person, it might be said that the design was to create a trust, because the purposes indicated are not those ordinarily performed by an individual; but when it is remembered that the very end which the corporation here made the beneficiary was organized to effect is the education of Bible readers and the instruction of girls in foreign lands, it becomes evident that the property was given to the corporation not in trust for indefinite objects, but that it was given to it to be used for its recognized and clearly defined corporate purposes. The specific design of the gift is that the proceeds of the property shall be used, that is spent, by the beneficiary for *its* chartered ends and not for someone else's benefit. The corporation is not to hold the fund for the use of others, but it is to spend that fund in the prosecution of its missionary work. * * * The whole scheme of the testamentary disposition contemplates imposing upon the beneficiary in declaratory language precisely the duty which its charter would have required it to perform with respect to this property had such declaratory language been omitted; save as to the *number* and *names* of the girls to be educated. These exceptions constitute, we think, not evidence of an intention to establish a trust, but they denote simply a condition which has been annexed to the gift."

JUDGE McSHERRY also said: "What has been said in relation to the six Indian girls is also applicable to the remaining portion of the clause respecting the purchase of a building to be used for the education of girls in India. This is a gift to the society, the property given to be used in the line of that Society's mission work. The use is a corporate use within the limits of its charter powers." See also *Erhardt* v. *Balto. Monthly Meeting, supra,* and *Ege* v. *Hering, supra.*

VOL. 110        18

Without further prolonging this poinion by discussing the cases relied on by the appellants, it is only necessary to say that they are distinguishable from those that we have quoted above. Most of them were to individual trustees, and were cases in which trusts were held to exist, but unless we over-rule many decisions of this Court the contention of the appellants cannot be sustained.

.When a testator designates the use of property left by him to a corporation of a character of these two, and those uses are just such as the corporation would make of it in carrying out the objects and purposes of its incorporation, it is like making a person a trustee for himself to declare such uses a trust. It would be equivalent to saying the corporation took the property *in trust* for such purposes as its charter author-ized. . That may be true in the sense indicated above, as all corporations hold their property in trust to use it as its charter and the law requires, but that is not the kind of trust which the appellants would have to establish the existence of in order to sustain their contention.

4. We will only add that what we have just said as to the Church Home and Infirmary is for the most part applicable to the bequest to the Emmanuel Church Home. The very purpose of that corporation, as expressed in its charter was, "the aiding of deserving poor women and children," and the bequest to it provides that the income thereof is to be used "under their rules and in the discretion of said legatee in assisting or maintaining poor respectable sewing girls or ap-prentices, unable to pay over two dollars a week for their board or unable to pay any thing." It would seem to be clear that the bequest is for a purpose within the scope of its charter, and hence what we have said along that line in refer-ence to the Church Home and Infirmary is applicable.

We therefore hold that there was no such trust impressed on either of these bequests as made them subject to the objections urged against them, and that both are valid. Having reached that conclusion it is unnecessary to consider other questions argued.

> *Decree affirmed, the costs to be paid out of the funds in the hands of the trustees*