THE STATE OF MARYLAND, use of the TRUSTEES OF THE METHODIST EPISCOPAL CHURCH AT GREENS-BOROUGH, *vs.* CHARLES WARREN, WILLIAM SAPP and ELI SAULSBURY, surviving obligors of P. TAYLOR.

*A void Bequest—Construction of Art. 35, of the Declaration of Rights of 1851—Construction of the Act of 1856, ch. 307—Jurisdiction of Orphans' Courts.*

R. by her last will and testament, bequeathed a moiety of the residue of her estate, after the payment of debts, costs of administration, and certain specific and pecuniary legacies, to the Methodist Episcopal Church

at Greensborough. an organized denomination of Christians, who became incorporated after the death of the testatrix. under the provisions of the Act of 1802, ch. 111. HELD:

1st. That this bequest was void. because there was no legatee in being capable of taking it, at the time the will went into effect.

2d. That regarded as a bequest to "any religious sect, order or denomination," it was also void under the provisions of Article 35, of the Declaration of Rights of 1851, then in force, "without the leave of the Legislature."

3d. That the provision of Article 35, of the Declaration of Rights of 1851, giving the Legislature the right to legalize gifts, &c , to any religious sect, order or denomination, did not confer the power to declare that an association incapable of taking a bequest, at the time the will took effect, because unincorporated, should upon being subsequently incorporated, be capable of taking it, although it had vested in the next of kin.

4th. That the Legislature in undertaking by the Act of 1856, ch. 307, to grant leave to carry into effect the bequest of R., in favor of "the Trustees of the Methodist Episcopal Church at Greensborough." incorporated subsequently to the death of the testatrix, transcended its constitutional powers.

5th. That the Orphans' Court of Caroline county had no jurisdiction to decide as to the validity of this bequest, and order the executor to pay over the same to the parties claiming it. It was a question to be determined only in the Courts of Law or Equity.

The Orphans' Courts have no jurisdiction, save what is expressly conferred by statute.

APPEAL from the Circuit Court for Queen Anne's County.

Mary E. A. Reed, of Caroline county, bequeathed a moiety of the residue of her estate, left after payment of debts, costs of administration and certain specific and pecuniary legacies, to "the Methodist Episcopal Church at Greensborough." Shortly after her death, letters testamentary were granted by the Orphans' Court of Caroline county to the executor, Charles Warren, of Delaware, who with the other defendants, citizens of the same State, and Parran Taylor, of Caroline county, Maryland, who died previously to the institution of this action, gave bond to the State in the penalty of $20,000;

for the faithful discharge of his duty as executor. This action upon his bond as such executor, was instituted in the Circuit Court for Caroline county, to recover the amount of this bequest. By this Court it was sent for trial to the Circuit Court for Queen Anne's county, and Judge ROBINSON being incapacitated to try said case by reason of his having been counsel for the defendants, the same was tried before GEORGE VICKERS, as Special Judge selected by the parties. For more than twenty years prior to the death of Mary E. A. Reed, there was an organized body of Christians known as the Methodist Episcopal Church of Greensborough, worshiping at a meeting house in said villiage built specially for that object, the title to which was vested in certain persons in trust for said purpose; at the death of the said Mary E. A. Reed, this organization was not incorporated, but since her death and before suing out the writ in this action, it became incorporated under the Act of 1802, ch. 111; afterwards the Legislature of Maryland by the Act of 1856, ch. 307, gave leave to carry into effect the bequest to "the trustees of the Methodist Episcopal Church of Greensborough." Subsequently the executor filed his petition in the Orphans' Court of Caroline county, submitting the whole question of distribution to its determination; thereupon the trustees of the Methodist Episcopal Church at Greensborough, and Sam'l Dickson and wife, in behalf of the wife as next of kin to the testatrix, filed their respective petitions in said Court claiming this fund, and praying the passage of an order directing the executor to pay according to their several pretensions; on consideration of these several petitions, the Court adjudged the Trustees of the Methodist Episcopal Church at Greensborough to be entitled, and ordered the executor to pay accordingly; he did not comply with said order, and thereupon this action was instituted.

The declaration set forth the bond of the defendant, Charles Warren, as executor of Mary E. A. Reed, and alleged as a breach thereof, that the testatrix by her last will

and testament bequeathed to the Methodist Episcopal Church at Greensborough, a moiety of the residue of her personal estate, left after payment of certain specific and pecuniary legacies, and that there came into the hands of the executor assets sufficient to pay all her debts, expenses of administration and other expenses, and to pay and deliver over to the pecuniary and specific legatees, the various pecuniary and specific legacies contained in said will, and leaving a large residue, and that the executor had not paid to the aforesaid trustees, the aforesaid moiety.   To this declaration, the defendants pleaded "that at the time of the death of the said Mary E. A. Reed, the said plaintiffs were not an incorporated religious institution, under the laws of this State."

To this plea the plaintiffs replied :

1st. That the plaintiffs, *since the death* of the said Mary E. A. Reed, and before the impetration of the original writ, was an incorporated religious institution.

2d. That the Methodist Episcopal Church of Greensborough, for more than twenty years before the death of the said Mary E. A. Reed, was an existing and organized denomination of Christians, worshipping at a meeting house in the town of Greensborough, built specially for the purpose of worship, and that since the death of the said Mary, the said church has been incorporated under the Act of 1802, ch. 111; and that by the Act of 1856, ch. 307, the Legislature of Maryland gave its leave to the legatee to take the legacy, and that the income of said church is less than $2,000 per annum including this legacy.

To this first and second replication the defendants demurred.

The plaintiffs then filed a third replication, setting out certain proceedings had in the Orphans' Court of Caroline county, upon the petition of the executor, submitting the question of distribution to its determination, and the petitions of the trustees of the Methodist Episcopal Church at Greensborough, and Samuel Dickson and wife, in behalf of

the wife as next of kin to the testatrix, claiming the fund in which the Court ordered the executor to pay to the trustees, &c., a moiety of the residue of the personal estate of his testatrix, which he had not paid, &c.

To this *third* replication the defendants demurred, and assigned the following causes of demurrer, viz:

1st. That this third replication is bad in substance, because it is a departure and variance from the declaration in this cause.

2d. That the said replication does not entitle the plaintiffs in this action to recover.

3d. That this replication is no bar to the defence in this cause.

4th. That said replication is no answer to the pleas of the defendants.

The plaintiffs joined in this demurrer; and the Court sustained these demurrers of the defendants to the plaintiffs' replications to the defendants' plea, and gave judgment for the defendants.

The plaintiffs appealed to this Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*John B. Brown,* for the appellants:

The Court below decided upon demurrer, that the original plea of the defendants was bad, and also that the original declaration of the plaintiffs, was erroneous, and insufficient in law to enable them to maintain their action against the defendants. In consequence of this ruling of the Court and by its leave, the plaintiffs filed an amended declaration, in which the breach of the bond is assigned to be the non-payment of a moiety of the residue of the estate of Mary E. A. Reed, to the beneficial plaintiffs, to which they were entitled by her bequest. To this declaration the defendants pleaded, that at the time of the making of the will, and the

death of the testatrix, the beneficial plaintiffs were not an incorporated religious institution. This is virtually a plea confessing the facts set out in the declaration, and avoiding their legal effect by some other matter. To this plea the plaintiffs demurred, stating as cause of demurrer, that incorporation when the will was made, and when the death of the testatrix occurred, was not necessary to enable the parties for whose use the suit was instituted, to take the bequest. This demurrer the Court rightly ruled good, and by not disturbing the amended declaration, in effect pronounced the facts stated therein if true, as constituting a *prima facie* good case for the plaintiffs. The defendants immediately filed an amended plea, which differed from that just held defective, only by the omission of the allegation that at the date of the will the beneficial plaintiffs were not incorporated. To this amended plea the plaintiffs put in three replications: The first asserts that since the death of the testatrix and before the suit brought, the beneficial plaintiffs were incorporated. Of course this replication impliedly admits non-corporation at the time of the death, and virtually takes the ground that incorporation subsequent to the death and before suit brought is sufficient to gratify the law. The second replication asserts three distinct facts: First, that the Methodist Episcopal Church at Greensborough, for more than twenty years before the death of the testatrix, was an organized body of Christians, worshipping in a church built especially for that purpose; second, that since the death of Mary E. A. Reed, the congregation worshipping there became incorporated under the Act of 1802, ch. 111; the third, that since the adoption of said plan of incorporation, the Legislature gave its leave to take the legacy. The third replication sets out more fully the several matters alleged in the original declaration; the order of the Orphans' Court in its very words, and the allegation that the executor had not complied with said order. To these three replications the defendants demurred for rea-

sons assigned. The Court ruled the demurrers good, and by not noticing the amended plea and declaration, virtually held them to be sufficient.

Was the amended plea a good defence? Was incorporation by the beneficial plaintiffs at the time of the testatrix's death necessary to enable them to take? If so, was it not equally necessary at the date of the will, unless it appears that the testatrix was aware of that fact, and used language showing that she contemplated a future act of incorporation? It would seem so. But was incorporation necessary, either at the date of the will or at the time of the testatrix's death? We hold it was not. There might well be parties capable in law of taking this bequest without incorporation. If there were persons holding the legal title to the church building and lot in trust, that it be used for a place of worship and burial for a Methodist Episcopal Congregation, we claim that such persons would be capable in law of taking the bequest by the leave of the Legislature. That there were such persons we were prepared to show. The plea, however, and the ruling of the Court sustaining it, exclude such ground from being taken by the plaintiffs. It is true the Act of 1802, ch. 111, confers on all religious sects who shall become incorporated under its provisions, the right to take without any further action of the Legislature, and the Court seems to have thought that the Legislature had by the passage of that Act exhausted all its powers on such subjects. In this the Circuit Court was mistaken; that Act did not and could not restrict the right of the Legislature to give subsequent leave to religious bodies, who had not availed themselves of its provisions. *Wright vs. Wright*, 2 *Md. Rep.*, 429. It must be borne in mind that when the Constitution of 1776, was adopted, there was no incorporated church in Maryland, except the Church of England. Before that time all other denominations of Christians were simply tolerated. Now the 34th section of the Bill of Rights does not contain the words, "church or corporation." It speaks

of religious sects, orders and denominations, and ministers, teachers and preachers of such. It intends to put them all on the same footing, whether incorporated or not, and it does absolutely enable them, as religious sects, orders or denominations, to take two acres of land for a house of worship, or for a place of burial, by gift, sale or devise, to some person in trust for such purpose. This proviso of the 34th section of the Bill of Rights evidently executes itself without the need of legislation. If something more or something different were given to some religious sect or denomination, then the action of the Legislature became necessary to enable the party to take, whether incorporated or not. As incorporation did not confer the ability to take, so want of incorporation was not of itself a disability. To a certain extent, as said before, the Act of 1802, ch. 111, supplied this need. When more is given than that Act specifies, or where the party with the gift within the limits of the Act, had not complied with its provisions, it is perfectly competent for the Legislature to remedy the defect by special legislation. For instance, no incorporated church could, under the Act of 1802, whose clear yearly income exceeded $2000, take a bequest under that Act.

But we maintain, that it is in the power of the Legislature to enable a church with such income to take by special act. The Bill of Rights considered that no mischief could result by allowing any religious sect, order or denomination, to take two acres of land for a place of burial, or to be improved as a place of worship. The Legislature in its wisdom, by the Act of 1802, supposed that no public detriment would ensue by extending its provisions in all cases where the gift, with the income already held, would not yield an income exceeding $2000. The right was still reserved to them of judging in any case beyond that, whether it would be reasonable and proper to give its assent. Will the objection be made that the leave must be given to the testatrix to will, and the bequest must be made in pursuance of such leave? On the

contrary, we hold that subsequent leave is contemplated by this section of the Bill of Rights, and that the very language of the Bill of Rights requires such construction, or is at least consistent with it. It is, every gift, grant or devise shall be void without the leave of the Legislature; now to every gift there must be a donor, to every grant, a grantor, and to every devise, a devisor; nor is there any devise, without the death of the devisor. The Bill of Rights pre-supposes every thing to have been done by the donor, grantor or devisor, as in other cases of gifts, grants and devises, to enable the donee, grantee or devisee, to take, as far as his action was necessary, and that nothing more remained to perfect the gift, grant or devise, except the assent of the Legislature. For whose benefit is the leave wanted? Certainly for that of the donee, grantee or devisee. Nor is there any thing in the ordinary meaning of the word "*leave*," to control this construction, because the leave is not to give, grant or devise, but to take what is given, granted or devised. The previous assent of the Legislature is necessary to enable the party to take the gift, grant or devise, though the gift, grant or devise be made before such assent be given.

The Court may have considered that as there was no incorporation at the death of the testatrix, there was no party *in esse* capable of taking when the will took effect, and the legacy therefore vested in the next of kin. We contend, however, that without incorporation there was a party *in esse* capable of taking, and if there were no such party at the time, it was in the power of the Legislature to look to the nature and object of the bequest, and to pass any and all acts that were necessary to carry it into effect. We insist that a legacy does not in case of a bequest under the 34th section of the Bill of Rights, vest in the next of kin, as a void legacy would, until the Legislature has refused its leave to the legatee to take. If it does vest in the next of kin immediately on the death, because the legatee is not legally capable of taking at the time, it becomes divested as soon as the leave of the Legis-

lature is given for the legatee to take; any other construction would make the Constitution of the State of less binding force than the changing temper of the law-making power. We maintain, therefore, with entire confidence, that by ruling the demurrer good to the replications of the plaintiffs, and thus impliedly holding that incorporation at the time of the testatrix's death was necessary to enable the beneficial plaintiffs to take, the Court below erred, and also erred in holding that the facts, that the beneficial plaintiffs held the legal title to the meeting house and church property, which a body of Christians known as the Methodist Episcopal Church at Greensborough, has used as a place of worship for more than twenty years anterior to the testatrix's death; that said body of Christians became incorporated subsequent to the death of testatrix under the Act of 1802; that subsequent to said incorporation, the Legislature by the Act of 1856, ch. 307, gave its assent to the beneficial plaintiffs to take the bequest, and that subsequent to the passage of said Act of Assembly, the Orphans' Court in a case in which the executor as such, together with the beneficial plaintiffs and also Sam'l Dickson and wife, claiming as next of kin, were parties, passed its order, directing Chas. Warren, the executor, to pay to the beneficial plaintiffs the amount of the legacy, do not singly or collectively help the case of the plaintiffs, on the contrary we further maintain, that the questions passed upon by the Orphans' Court were final between the parties, being a Court of competent jurisdiction, except upon appeal, unless its decree was produced by fraud or imposition, or in the absence of the proper parties. *Craufurd's Adm'r, et al. vs. Craufurd, et al.,* 22 *Md. Rep.,* 465; *Casselly and Wife, et al. vs. Meyer, et al.,* 4 *Md. Rep.* 1; *Vansant vs. Roberts,* 3 *Md. Rep.,* 128; *Dorsey's Ex'r vs. Dorsey,* 9 *Md. Rep.,* 37; *Dorsey's Ex'r vs. Dorsey,* 10 *Md. Rep.,* 471; *Ridenour, et al. vs. Keller,* 2 *Gill,* 145. We hold that if the decision of the Orphans' Court had been in favor of Sam'l Dickson and wife, in the case before it, and payment had been made to

them by the executor, in consequence of said decision, after the time limited for an appeal, and no appeal had been taken, the plea of these facts would have barred any recovery in an action, and that upon the very ground on which we rest our claim in this suit. Therefore, we insist, that the Court below not only erred in overruling the original declaration, but also in ruling the demurrer to the plaintiffs' three replications to the defendants' last amended plea to be good, and thereby not only denying the sufficiency of said replications to maintain the case of the plaintiffs, but also affirming the sufficiency of said amended plea to defeat the claim of the plaintiffs. And that such rulings must for the reasons above stated, be reversed.

As to the right of the Legislature to pass the Act of 1856, ch. 307, enabling the beneficial plaintiffs to take under the will of Mary E. A. Reed, we refer to sec. 34 of the old Bill of Rights contained in the Constitution of 1776, and sec. 35 of the Bill of Rights in the late Constitution, identical in phraseology, and the contemporaneous and continuous exposition, and construction thereof, as exhibited in the numerous Legislative Acts, beginning with ch. 17 of 1791, and ch. 12 of 1792, and continuing up to the passage of the Act in question, declaring the right of the Legislature to incorporate and give its leave to take, hold and receive after the grant, gift, devise or bequest has been made, and become operative, but for the provisions contained in the Bill of Rights referred to. As to the weight and authority of such legislative construction, the following cases are referred to: *Harrison, et al. vs. State, use of Harrison,* 22 *Md. Rep.,* 469; *The State vs. Mayhew,* 2 *Gill,* 487; *Baugher, et al. vs. Nelson,* 9 *Gill,* 306; *Vansant vs. Roberts,* 3 *Md. Rep.,* 128; *Beatty & Ritchie vs. Kurtz, et al.,* 2 *Peters,* 582; *Attorney General and Bowyer,* 3 *Vesey,* 714.

As to the inherent capacity of an unincorporated association, capable of clear identification, to take by devise or gift, an absolute unconditional bequest of personalty; we refer to

State, use of Trustees of M. E. Church *vs.* Warren, *et al.*

the cases reported in the American Law Register for month of March, 1865, entitled, "In Re Benajah Ticknor's Estate," and the numerous American decisions cited in the notes thereto. In conclusion, therefore, it is respectfully insisted that the Court below not only erred in overruling the original declaration, but also in ruling the demurrer to the plaintiffs' three replications to the defendants' last amended plea, to be good, and thereby not only denying the sufficiency of said replications to maintain the case of the plaintiffs, but also affirming the sufficiency of said amended plea, to defeat the claim of the plaintiffs, and that such rulings should be reversed.

*J. Wirt Randall* and *Alex. B. Hagner,* for the appellees.

The rulings of the Court below in sustaining the defendant's demurrers, are correct.

1st. Because the defendants' third plea having submitted a specific defence, it was required of the plaintiffs to deny the facts averred therein, and take issue, or to admit their truth, and to demur to them as insufficient in law as a defence, neither of which they did; but, in these three separate replications, without admitting or denying the plea, they tender three new issues of facts not before introduced into the cause, which is a departure and against which the Court rightfully sustained the defendants' demurrer. 1 *Code, Art.* 75, sec. 10 ; 1856, *ch.* 112, secs. 35, 44, 45, 54, 62, 76, 77, 102 ; 1 *Chitty's Pl.*, 617, 619, 623, 625, 631 ; *Stephen's Pl.*, 241, 410, 418 ; *Yingling vs. Hoppe,* 9 *Gill,* 310 ; *Evans' Prac.*, 170, 174, (ed. of 1867.)

2d. Because these replications tender immaterial issues, if the plaintiffs were not capable in law of taking this residuary legacy, at the death of the testatrix, or at the proper time for its payment, it vested in the other residuary legatees or distributees of the estate, and no subsequent act could divest it. *Burroughs vs. Clarke, et al.,* 3 *Gill,* 197 ; *Mitchell vs. Williamson,* 6 *Md. Rep.,* 210 ; *State vs. Price,* 21 *Md. Rep.,* 455 ; *McCauley vs. State,* 21 *Md. Rep.,* 571.

3d. Because the plaintiffs' second replication does not claim this legacy in their own name on the record, or as due to them, the plaintiffs, but as due to "The Methodist Episcopal Church of Greensborough," which may or may not be the plaintiffs. *Runyan vs. Costar,* 14 *Peters,* 129; *Stephen's Pl.,* 251, 255.

4th. Because the plaintiffs, in their third replication, recite a controversy in the Orphans' Court between other parties than the executor and these defendants, and they then claim in this replication that the Orphans' Court decided certain abstract rights of these parties without stating any definite sum as due to the plaintiffs, and yet conclude that the defendants refused to pay the same, &c., and was therefore obnoxious to the other objections taken by the defendants thereto, viz:

2. That it did not entitle the plaintiffs to recover.

3. That this replication was no bar to the defence in this cause.

4. That it is no answer to the defendants' pleas.

5th. Because there being a demurrer in this case, the Court will examine all the pleadings, and mount up to the first error, and that is found in the amended declaration which avers that the legacy claimed was bequeathed to "*The Methodist Episcopal Church of Greensborough,*" not to the plaintiffs who were afterwards, and after the death of the testatrix, incorporated by the name of "*The Trustees of the Methodist Episcopal Church of Greensborough,*" and there is no averment that the plaintiffs have the right to this legacy, or that a suit had first been brought against the executor, or that the executor had promised to pay. *Lark vs. Linstead,* 2 *Md. Ch. Dec.,* 163; *Kent vs. Somerville,* 7 *G. & J.,* 268; 3 *Rob. Prac.,* 274; *Evans' Prac.,* 178, 9, *and notes; State vs. Price,* 21 *Md. Rep.,* 454.

6th. Because the declaration first filed having, on demurrer thereto, been ruled by the Court below as insufficient in law, and no appeal taken from that ruling, but the plaintiffs having submitted thereto and filed an amended declaration, on

State, use of Trustees of M. E. Church vs. Warren, et al.

which all the subsequent proceedings were founded, this ruling of the Court on the first demurrer to the first declaration, is not now before this Court for review; and if proper to be reviewed, the Court will sustain it. *Stoddert vs. Newman*, 7 *H. & J.*, 256; *Mitchell, Adm'r, vs. Williamson's Ex'rs*, 9 *Gill*, 77; *Tucker, et al. vs. State, use of Kneighton*, 11 *Md. Rep.*, 329.

7th. Because the bequest to "*The Methodist Episcopal Church*," is void for uncertainty, both in regard to those who are to take, and in regard to those for whose benefit it is to be taken. *Wigram on Wills*, 101, 135, 136, 137, 163; *Dashiell, et al. vs. Attorney General*, 5 *H. & J.*, 392; *Dashiell vs. Attorney General*, 6 *H. & J.*, 1; *Stokely vs. Gordon and Wife's Lessee*, 8 *Md. Rep.*, 515; *Wilderman vs. Mayor and C. C. of Baltimore*, 8 *Md. Rep.*, 551; *Grant on Corp.*, 51, 111, 123; *Angell & Ames on Corp.*, sec. 181, 184; *Baptist Asso. vs. Hart's Ex'rs.*, 4 *Wheat*, 1; *Vidal, et al. vs. Girard's Ex'rs*, 2 *How.*, 192; *Owens vs. The Miss. Society of the Meth. Epis. Church*, 14 *N. Y.*, 388; *Beekman vs. Benson*, 23 *N. Y.*, 309; *The Amer. Bible Society vs. Wetmore*, 17 *Conn.*, 181; 4 *Amer. Law Reg.*, 526.

8th. That this uncertainty in those who are to take this legacy, cannot be cured by the subsequent act of incorporation, after the death of the testatrix, even if incorporated by the same name, and to take charge of this legacy, which is not the case now before the Court. 2 *Black Comm.*, (272); *Kilty's Rep.*, 141, 161, 190; *Grant on Corp.*, 51, 111, 123, margin; *Bacon's Abr.* "*Corporations*," letter *E*; *Angell & Ames on Corp.*, 55, 101, 123; *Murphy vs. Dallam*, 1 *Bland*, 529; *Vansant vs. Roberts*, 3 *Md. Rep.*, 119; *Carroll vs. Lingan*, 3 *H. & McH.*, 333; *Landholders' Asst.*, 42; *Mayor, &c. of Baltimore vs. State, &c.*, 15 *Md. Rep.*, 376; 1776, *Bill of Rights, Art.* 33 *and* 34; 1692, ch. 2, sec. 6; 1722, ch. 4; 1773, ch. 28; 1791, ch. 17; 1792, ch. 12; 1792, ch. 55; 1794, ch. 44; 1797, ch. 58, sec. 9; 1798, ch. 30, sec. 10.

9th. Because this legacy is void under the 35th Article of the Declaration of Rights of 1851; and the Act of 1856, ch.

307, passed in relation thereto, is unconstitutional. *See* 38*th Art. of Declaration of Rights of* 1864 *and* 1867; 1798, *ch.* 101, *sub-ch.* 1, *sec.* 2.

1. It undertakes to change the name of the legatees under the will of the testatrix, giving the legacy to others than those named therein.

2. It is not a case wherein this Declaration of Rights authorizes the Legislature to grant leave to take a legacy. 35*th Art. of Declaration of Rights of* 1851; 38*th Art. of* 1864 *and* 1867; *Murphy vs. Dallam,* 1 *Bland.,* 529; 1 *Deb. Conv.* 1864, *p.* 385.

3. It undertakes to exercise judicial powers, which are vested exclusively in the Courts of this State. 7*th Art. of Declaration of Rights of* 1851; *Crane vs. McGinnis,* 1 *G. & J.,* 463; *Prout vs. Berry,* 2 *Gill,* 309.

4. It undertakes to divest vested rights. *Baugher vs. Nelson,* 9 *Gill,* 299; *Wilderman vs. The Mayor, &c.,* 8 *Md. Rep.,* 551; 4 *Am. Law Reg.,* 526; *Berrett vs. Oliver,* 7 *G. & J.,* 206; *Thistle, et al. vs. The Frostburg Coal Co.,* 10 *Md. Rep.,* 129; *The Regents of the University of Maryland vs. Williams,* 9 *G. & J.,* 409, 412; *Billingsley vs. Tongue,* 9 *Md. Rep.,* 575.

MILLER, J., delivered the opinion of this Court.

This is a suit at law, upon an executor's bond to recover a bequest of a moiety of the residue of her personal estate, made by the testatrix, Mary E. A. Reed, "to the Methodist Episcopal Church at Greensborough." By the pleadings, upon which alone the case is before us, it is admitted that at the time the will took effect, this church was *not incorporated,* but that since the death of the testatrix it became incorporated under the provisions of the Act of 1802, ch. 111. As a general rule it is clear that a bequest or devise to an unincorporated association is void, and it is only by virtue of that peculiar jurisdiction exercised by Courts of Equity, in regard to charitable uses, that such bequests have ever been sustained. In the case of *The Baptist Association*

State, use of Trustees of M. E. Church *vs.* Warren, *et al.*

*vs. Hart's Ex'rs,* 4 *Wheat,* 1, the bequest under a will exe-
cuted in Virginia which took effect in 1795, was "to the
Baptist Association that for ordinary meets at Philadelphia,
annually," as a perpetual fund for the education of youths
of the Baptist denomination, &c.   The Baptist Association
which met annually at Philadelphia, had existed as a regu-
larly organized voluntary association for many years before
the date of the will, but was not incorporated until the year
1797, when it received a charter from the Legislature of
Pennsylvania, under the corporate name of "The Trustees
of the Philadelphia Baptist Association," and the Court,
Chief Justice MARSHALL, delivering its unanimous opinion
held that the association was sufficiently described, but not
being incorporated it was not capable of taking the bequest;
that it could not be taken by the individuals who composed
the association, at the death of the testator, and that the sub-
sequent incorporation of the society did not give it capacity
to take.   The Court said the legacy was void, and the prop-
erty vests, if not otherwise disposed of by the will, in the
next of kin, and "a body corporate afterwards created had
it even *fitted* the description of the will, cannot divest this
interest and claim it for their corporation."   In the case of
*Meade, et al. vs. Allison, et al.,* in the Circuit Court of the
United States, Maryland District, decided by Chief Justice
TANEY, in 1850, the bequest was "to the Education Society
of Virginia, for the benefit of the Theological students at
the Protestant Episcopal Theological Seminary of Virginia,
near Alexandria, District of Columbia."   This Education
Society was not incorporated, and it was held the bequest
was void.   The Chief Justice said the case must be governed
by the cases of *Dashiell, et al. vs. The Attorney General,* 5 *H.
& J.,* 392, and 6 *H. & J.,* 1, which decide that the Statute of
43 Elizabeth, ch. 4, concerning charitable uses, has not been
adopted nor *its principles* recognized as a part of the *common
law* of this State.   He also said the same ruling was made
by the Supreme Court in the case of *The Baptist Association*

vs. *Hart's Ex'rs*, in reference to Virginia, and that the case of *Vidal, et al. vs. Girard's Ex'rs*, 2 *How.*, 192, was decided altogether upon the law of Pennsylvania—upon the common law of that State as recognized there by universal usage and judicial decisions—and whilst holding the devise valid in that case in Pennsylvania, the Court still recognized as authority the case of the *Baptist Association vs. Hart's Ex'rs*, which decided that a similar devise was void in Virginia. These cases, and the decisions of our own Courts therein referred to, settle the law in this State, and it is unnecessary to look to what the Courts of other States may have held in similar cases. The doctrine, however, that a bequest of this kind directly to an unincorporated body or association of individuals is void, and that a subsequent act of incorporation will not enable them to take, was expressly decided by the Court of Appeals of New York in *Owens vs. The Missionary Society of the Methodist Episcopal Church*, 14 *N. Y. Rep.*, 380, and recognized by the same Court in *Beekman vs. Bonsor*, 23 *N. Y. Rep.*, 309. That such a bequest would be held void in a *Court of law*, however it might be sustained in equity, has also been decided by the Supreme Court of Connecticut in several cases. *Greene vs. Dennis*, 6 *Conn.*, 293; *Brewster vs. McCall*, 15 *Conn.*, 294; and *The American Bible Society vs. Wetmore*, 17 *Conn.* 181.

This bequest must, therefore, be held void, because there was at the time the will took effect, no legatee in being capable of taking it. Regarded as a bequest to " any religious sect, order or denomination," it was also void under the provisions of the 35th Article of the Declaration of Rights of 1851, then in force, " without the leave of the Legislature." Whether this leave could be validly given by the antecedent General Laws of 1802, ch. 111, sec. 8, and 1815, ch. 222, or whether a special antecedent law was necessary in each case, or whether the leave could be given by a subsequent Act as was attempted in this case by the Act of 1856, ch. 307, are questions which it is unnecessary to determine because we are

clearly of opinion the power thus given to the Legislature, whenever or however exercised, was simply the power to remove the *disability* imposed by this Article of the Declaration of Rights.    It had no power to remove that, and at the same time to declare that a body or an association incapable of taking at the time the will took effect, because unincorporated, should when incorporated, or upon being subsequently incorporated be capable of taking a bequest which by *this reason* had become void, and was vested in the next of kin.  We are, therefore, fully satisfied that when the Legislature by the Act of 1856, ch. 307, undertook to grant leave to carry into effect this bequest in favor of the "Trustees of the Methodist Episcopal Church at Greensborough," incorporated subsequently to the death of the testatrix, it transcended its constitutional powers and that the antecedent laws of 1802, ch. 111, and 1815, ch. 222, for the same reason can have no such effect, even if they should otherwise be considered as applicable to the case.

The third replication presents another question, viz: that the right to this legacy had been definitively adjudicated in favor of the trustees by the Orphans' Court of Caroline county, upon petitions filed in behalf of the next of kin and by the trustees of the church.    This determination is said to be conclusive, being the decision of a Court of competent jurisdiction to adjudicate and decide finally the matter in controversy.    In *Craufurd's Adm'r vs. Craufurd, et al.,* 22 *Md. Rep.*, 447, this Court decided that under the provisions of our testamentary law, the Orphans' Courts have power to determine who are next of kin, and to decide between parties claiming adversely to each other and determine which of them are next of kin entitled to distribution, but that decision does not go to the extent of holding that these Courts have jurisdiction to decide questions like the present, involving the validity or invalidity of a bequest under a will.    Such questions can only be determined in the Courts of Law or Equity.    The Orphans' Courts have no jurisdiction save what is conferred by statute.    They are

forbidden under pretext of incidental power or constructive authority, to exercise any jurisdiction not expressly conferred by law.    *Code, Art.* 93, *sec.* 252.    We find no authority expressly given them to adjudicate such questions as are presented in this case, and their jurisdiction cannot be extended by construction.    The executor was, therefore, justified in refusing to pay this legacy to the plaintiffs under the order of the Orphans' Court, and in requiring them to assert their claim to it by a proceeding at law or in equity.    It follows that all the replications to the defendants' plea were bad, and the demurrer to them properly sustained.    It is unnecessary to decide any other of the many questions of pleading presented in argument, because none of them however decided, could give the plaintiffs a right to recover.    It is to be regretted that the wishes of the testatrix should be thus defeated, but our duty is to *declare* the law as we find it to be, not to *make* law for the purpose of carrying out what we may think in individual cases, *ought* to be done.

*Judgment affirmed.*

(Decided 4th March, 1868.)

