# PRESIDENT AND COUNCIL OF MT. SAINT MARY'S COLLEGE

## *vs.*

## HENRY WILLIAMS AND BENJAMIN F. REICH, TRUSTEES UNDER THE WILL OF CHARLES W. HOFFMAN, DECEASED.

*Corporations under control of religious denominations : not necessarily religious corporations within the provisions of Article 38 of the Bill of Rights. Educational corporations : right to receive legacy for chapel; devises to corporations; when donations are not trusts.*

The mere fact that a corporation is under the control of members of a particular church does not make it a religious corporation, and bequests to such a corporation do not come within the prohibition of Article 38 of the Declaration of Rights. pp. 188, 189

Courts ought not to be astute in searching for constructions which nullify a will, if there are other reasonable interpretations which uphold it. p. 191

Where a legacy or devise is given to a corporation for the purpose of carrying out any of its corporate functions, such donation will not be regarded as creating a trust, unless such intention be clearly shown; but it is to be treated as a gift to the corporation upon condition that it be applied to the particular corporate use. p. 191

Where a testator created a trust for certain persons for life, which trust he declared should cease on the death of the last survivor of them, and the fund should then be paid over to Mount St. Mary's College, to be used in the erection of a church upon the college grounds, it did not create any trust for the college, but was a legacy direct to the corporation.          p. 192

A corporation chartered for general educational purposes is capable of using a legacy left to it for the purpose of constructing a church or chapel on its own grounds.          p. 192

*Decided January 16th, 1918.*

Appeal from the Circuit Court for Frederick County. In Equity.   (WASHINGTON and PETER, JJ; URNER, C. J., dissenting.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, STOCKBRIDGE and CONSTABLE, JJ.

*Robert Biggs* and *John S. Newman* (with whom was *Vincent Sebold* on the brief), for the appellant.

*Leo Weinberg* and *Isaac Lobe Straus* (with whom were *Magruder, Stephen & Magruder* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

This appeal presents for consideration the question of the validity of a bequest to the President and Council of Mount Saint Mary's College, contained in the residuary clause of the Will of Dr. Charles W. Hoffman, late of Frederick County, deceased.

Dr. Hoffman's will is dated September 7, 1894, and was probated on January 4, 1897. The testator died in December, 1896. His will contained a number of bequests to friends and relatives and disposed of the rest and residue of his estate as follows:

"All the rest and residue of my estate of whatever description and wherever situated, I give, devise and bequeath to my friends, Charles W. Ross, Sr., Henry Williams and Benjamin F. Reich, all of Frederick, Maryland, in trust to keep the same invested and to pay the income or proceeds of the same semi-annually to my half-brothers, William F. Hoffman and John Hoffman, and my cousins, Hannah H. Reich, Sophia E. Trundle, John H. Reich, Henry C. Reich and C. Julian Reich, in equal shares during their natural lives, commencing for the first semi-annual payment six months after the probate of this my last will and testament; said equal shares of said income or proceeds to go to them during their natural lives respectively, and on the death of any one of the aforenamed beneficiaries, a similar division of said income or proceeds shall continue to be made among the survivors, and this is to continue until there shall *shall* but one survivor, who shall then receive during his or her natural life the entire income or proceeds, and on the death of the last survivor this trust shall cease, and I direct that my said trustee shall then pay the sum of ten thousand dollars to the president and directors of Georgetown College, D. C., to be used by them for the benefit of the library of said college, and I direct my said trustees to then pay the rest and residue of this trust fund to the president and council of Mt. St. Mary's College, near Emmitsburg, Frederick County, Maryland, to be used by them for the erection of a plain, substantial stone church on the site of the present old church on the hill near the graveyard, and not on the coombe or plain below near the college building."

The last survivor of the life beneficiaries mentioned in the clause of the will just quoted died on or about March 1, 1914, and shortly afterward Messrs. Vincent Sebold and John S. Newman, substituted trustees under the will, caused an auditor's account to be stated which showed $63,094.09 for distribution under the residuary clause, of which $10,-000 was allowed to the President and Directors of Georgetown College, and the balance, $53,094.09, to the President and Council of Mount St. Mary's College. The account was ratified as to all items except the one last mentioned, to the allowance of which exceptions were filed. The next of kin of the testator and Mount St. Mary's College were afterwards, through appropriate proceedings, made parties to the case, the former appearing as plaintiff petitioners, claiming the fund, and the latter as respondent. In its answer, as well as in the testimony of its President, the College expressed its intention to use the fund of $53,094.09, if paid over to it, in strict conformity to the wishes of the testator as expressed in his will.

After hearing and argument, the lower Court, JUDGES WORTHINGTON and PETERS (CHIEF JUDGE URNER dissenting), passed a decree in which the residuary bequest to the President and Council of Mount St. Mary's College was declared to be "wholly ineffectual, inoperative, void and of no effect," and in which the papers in the case were referred to the auditor for the purpose of distributing the fund among the next of kin of the testator, as their interests may appear, after deducting the costs and expenses of the litigation. This appeal is from that decree.

The facts disclosed by the record are that the "old church on the hill near the graveyard," referred to in Dr. Hoffman's will was founded in 1806 or 1808 by Fathers Dubois and Brute. At the same time they founded a college. This college was afterwards incorporated by Chapter 316 of the Acts of 1835 under the name of the President and Council of Mount Saint Mary's College. It is a secular, and not a

religious corporation, chartered "for the education of youth, the pursuit of science and the general diffusion of knowledge." Its founders were members of the Roman Catholic Church; its officers are members thereof, some of them priests, and some of its students it prepares for the priesthood. But this does not change its secular character. In *Baltzell* v. *Church Home,* 110 Md. 244, JUDGE BOYD says: "The mere fact that a corporation is under the control of members of a particular church does not make it a religious corporation." Later on in the same opinion JUDGE BOYD has this to say, which is peculiarly applicable to this case: "But the case which is perhaps most analogous to this is that of *Colbert* v. *Speer,* 24 App. Cas. (D. C.) 187. JUDGE ALVEY delivered the opinion. The Court was considering a devise and bequests to the Georgetown College, which were objected to because it was contended they were intended to be 'for the support, use and benefit of a religious sect, order and denomination, and to a public teacher of the gospel as such.' As the Maryland Declaration of Rights was in effect in the District, the decision is peculiarly applicable. The Court said: 'The fact that the college is or may be under the administrative control of a religious order known as the Order of Jesus does not bring the institution within the prohibition of the Declaration of Rights. The college is not a religious institution intended for the tuition and propagation of a particular doctrine and creed of religious belief, to the exclusion of all other creeds and beliefs, but it is an institution of learning for the admission and education of students of all denominations of religious faith. The act of incorporation of the college does not limit the exercise of the corporate powers conferred to the promotion of any religious creed or denomination, but the college is open to all alike. For limitations of the powers and objects of the college we must look to the charter granted by Congress, and not elsewhere.' "

The bequest, therefore, did not come within the provision of Article 38 of the Declaration of Rights. The legislative sanction was not required.

At the time the will was executed the site of the "old church on the hill near the graveyard," and the old church itself, had been the property of the college for many years. In the beginning the college was located near the church, but the college was afterwards moved to the plain or coombe below where it is now. The church itself had fallen into a state of disrepair. It was, in fact, dangerous. About 1894 it had ceased to be used by the students of the college. The priests of the college attended the parish as they had always done since the foundation of the college, in 1806 or 1808, until 1893 or 1894, when a separation took place between the college and the parish, although the parish continued to worship at the old church until its church, St. Anthony's, was dedicated and opened in 1897, a year after the testator's death and three years after the date of the will. There had been for a number of years a Roman Catholic church at Emmitsburg, about two miles from the college, and a chapel at Mount St. Joseph's Academy, a Catholic institution for the education of young women about an equal distance away. There were also several places of private worship at the college. These are the facts as they existed at the time of the will.

The counsel for the appellees earnestly contend that the bequest was intended by the testator to be a *trust for the use of the parish* formerly worshiping at the "old church on the hill near the graveyard." In the recent case of *Conner* v. *Trinity Reformed Church,* 129 Md. 360, where the testator devised his hotel property to the church, "in trust to apply the net annual income therefrom to the support of the minister, who may from time to time be in charge of said church," JUDGE CONSTABLE, in delivering the opinion of this Court, said: "It is apparent, therefore, that the principal discussion must be as to whether or not there is a trust

created. And so often have cases, similar in many respects to the present one, been before us and our predecessors, that the rules applicable to their settlement have become fixed and settled. The late CHIEF JUDGE McSHERRY, in delivering the opinion of this Court in *Bennett* v. *Humane Imp. Society,* 91 Md. 10, has clearly stated the rule by which Courts are to determine when a trust does, or does not, arise. He said: 'A trust may be created either by the use of appropriate technical words which, of their own proper vigor, indicate that a trust was designed to be raised, or, in the absence of such words, a trust may be created by other language when the purpose to establish it is otherwise sufficiently apparent. In both instances, however, it always becomes a question of intention as to whether a trust exists. If there be a manifest design to establish a trust, then a trust will be declared, though no apt technical words are employed; and if there be an equally manifest design not to establish a trust, then no trust will be declared, though the words employed would, but for the contrary intention, be sufficient to create a trust. * * * The particular circumstances which denote such an intention are necessarily variant; but when a trust of the kind relied on here is asserted, it may be generally affirmed that where there is a gift to one for the use of another, or when the legatee or devisee is clearly designed to have no beneficial interest in the property given him, a trust for the benefit of someone was intended to be created.' And in the same case JUDGE McSHERRY also had the following to say, which is particularly appropriate to the facts of the case under consideration: 'His intention was that the legatee and devisee named by him should possess it. If that legatee and devisee does not get the property disposed of by this clause, it will be because the testator's intention is frustrated. Ordinarily, the task which devolves upon a Court in dealing with the interpretation of the last will is to ascertain the testator's intention; and the duty then imposed is to give that intention effect, if possible; but in the pending

controversy, whilst the intention is apparent enough, the object of the proceedings avowedly is, not to give that intention effect, but to disregard it altogether. There are, of course, instances where this has been done, because the rules of law imperatively required that it should be done; but when done, it has always been done with great reluctance. Courts are not, or ought not to be, astute in searching for a construction which nullifies a will if there are other equally reasonable interpretations which uphold it.'

"Does the language of this paragraph under consideration show a clearly defined intention upon the part of the testator to create a trust? The general rule is that where a legacy or devise is given to a corporation for the express purpose of carrying out any of its corporate functions, such donation will not be regarded as creating a trust unless the intention to create a trust be clear, but as a gift to the corporation itself upon condition that it be applied to the particular corporate use."

It is evident from the character of the bequests contained in this will, and they number over ninety, that the testator was an educated and cultivated man. By apt and appropriate words he created a trust, with his half-brothers and cousins as life beneficiaries, which trust, he declared "shall cease" on the death of the last survivor of them, and that the trust fund should *then* be paid over, $10,000 to Georgetown College for the use of its library, and the balance of the trust fund to The President and Council of Mount Saint Mary's College to be used in the erection of a plain substantial stone church on the particular designated site. Had he wished the trust to continue beyond the death of the last survivor of his half-brothers and cousins, he would not have used the plain unambiguous terms employed in his will as to the time when the trust should terminate. It appears to be quite clear that he intended the funds coming into the hands of the President and Council of Mount Saint Mary's College under the residuary clause of his will should be used

in perpetuating a church standing on the college property, where the students and faculty of the college had worshipped for nigh unto a century. It was essentially a college and not a parish church, and its reconstruction by the college to which it belonged, and with which it had been so closely associated since the earliest period of its history was the object the testator had in mind. The legacy was given direct to the corporation. The parish had no beneficial interest in the fund. It owned neither the land on which the old church was built, nor the church itself, and the bequest was not intended as a trust for its benefit.

It can hardly be seriously contended that the particular use to which the bequest is to be applied is one beyond the corporate powers of the college. Its charter declared that it "shall be capable in law to purchase, take, hold and convey in fee simple, or for any less estate, any real or personal estate whatsoever; provided that the said Association shall at no time hold or possess more than two thousand acres of land, and that the yearly value of the estate, real and personal, of the said Association, exclusive of the buildings and appurtenances appropriated for the use of the students and professors of the same, and of their private chapel, shall not exceed the sum of twenty-five thousand dollars."

The only limitations, therefore, upon the powers of ownership vested in the college are (1) that the extent of its property is limited to two thousand acres of land and (2) that its "annual value," excluding certain buildings and its "private chapel" shall not exceed twenty-five thousand dollars. We have no hesitation in holding that a corporation chartered for general educational purposes, is capable of using a legacy left to it for the purpose of constructing a church on its own property. The idea of the worship of God is too closely associated with that of education to permit us to say that this particular corporation has not the power to build and maintain a church building upon its own property, as directed in the will.

In 1907, a year after the testator's death, the parish had constructed and opened its own church, St. Anthony's, about one-fourth of a mile from the college buildings. In 1910 the college erected a handsome church "on the plain or coombe below" near the college buildings. In 1913 the "old church on the hill near the graveyard" was destroyed by fire. It is contended that there are a sufficient number of churches or places of worship for Roman Catholics in the neighborhood of Mount Saint Mary's College and that the use of the fund of $53,094.09 in the restoration of the "old church on the hill near the graveyard," isolated as it is, would be an utter waste of the fund. This may or may not be true, but it cannot determine the rights of the parties to this controversy. The college acquired on the probate of the will a vested interest in remainder in its share of the trust fund, and no extraneous or subsequent act of it or others in building one or more churches upon or near the college grounds or elsewhere, can be held to divest that interest.

It follows from the views expressed that the decree of the lower Court must be reversed.

*Decree reversed and cause remanded; costs to be paid out of the fund.*