NAN WIMBROW CURTIS *v.* MARYLAND BAPTIST
UNION ASSOCIATION ET AL.

[No. 4, April Term, 1939.]

432

*Decided April 26th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*G. Walter Mapp* and *Edmond H. Johnson,* for the appellants.

*N. Irvin Gressitt* and *John S. Whaley,* for the appellees.

JOHNSON, J., delivered the opinion of the court.

At the time of his death on October 30th, 1918, Julius T. Hall, of Pocomoke City, Worcester County, Maryland, was advanced in years and unmarried, his nearest relatives being two brothers and a sister. By his last will and testament, dated January 28th, 1916, and duly probated on November 8th, 1920, he undertook to dispose of his estate. The will contained no residuary clause. He devised his house and lot to his sister, Laura Wimbrow, his farm to a brother, Charles Hall, and one acre of land to the Trustees of the Pocomoke Baptist Congregation. To a niece, Lois Elliott, another parcel of real estate was devised. His tangible property, consisting for the most part of furniture, personal effects, and a small amount of livestock, was bequeathed to various friends and relatives.

The bulk of his personal estate comprised securities and cash in bank. These he dealt with in the fifth and sixth items of his last will and testament as follows:

"Fifth, I hereby instruct my executor to put in trust all bonds and cash in bank of which I may die seized and possessed, the annual income from same to be divided equally between my brother, Charles Hall, and sister, Laura Wimbrow, as long as they live, and at the death of either, the survivor to enjoy the whole income for the remainder of his or her life, at which time provision is hereinafter devised.

"Sixth, I give to the Maryland Baptist Union Association, after the death of my brother and sister, as set forth in the preceding item, the bonds and money which are left in trust, provided they will raise within twelve months a like amount to build an Orphan's Home somewhere in the State of Maryland; but if they do not raise an amount to equal the amount in trust in twelve months,

I instruct that this amount be left in trust until the income added to the principle shall make a like amount, thus doubling the principle, at which time I give to said Maryland Baptist Union Association to enjoy absolutely, for the purpose of building an Orphan's home in the State of Maryland."

On September 10th, 1929, the cash and securities thus referred to, amounting to $20,354.61, were by his administrator d.b.n.c.t.a. delivered to the First National Bank of Snow Hill, which had, upon the petition of Maryland Baptist Union Association, been designated by the Circuit Court for Worcester County as trustee to receive the same after the court had assumed jurisdiction. The trustee thus appointed duly qualified and administered the trust until July 12th, 1935, at which time its petition to be discharged was granted, after it had filed an accounting, and subsequently, upon petition of Maryland Baptist Union Association, the Safe Deposit and Trust Company of Baltimore was appointed substituted trustee of the funds in question and is continuing to act as such.

Charles Hall, one of the life tenants mentioned in the fifth item of the will, died in June, 1925, and Laura Wimbrow, the other life tenant, died in January, 1932. Both life tenants, as well as Richard F. Hall, a brother of the testator not provided for in the fifth item of the will, left children surviving them, all of whom in February, 1938, filed their petition in the Circuit Court for Worcester County on the equity side thereof, alleging the facts heretofore referred to, including their relationship to the testator and the life tenants under the will and charged (1) that the object of the bequest contained in the sixth item of the will was not included in the corporate powers of the Maryland Baptist Union Association; (2) that the object for which the gift was to be applied was not such as the corporation was organized for, and, therefore, amounted to a trust for an indefinite object; (3) that the bequest was void, because it violated the rule against perpetuities, especially as to remoteness. The prayers of the petition were (a) that the court decree that the trust

created under the will be terminated, and that the bequest over to the Maryland Baptist Union Association be declared null and void, and the substituted trustee be directed to turn over to the plaintiffs, as the next of kin of the testator and the rightful owners thereof, the funds in its possession; and (b) for further relief.

To that petition, answers as well as demurrers were filed by the succeeding trustee and Maryland Baptist Union Association, testimony was taken orally before the chancellor, and at the final hearing upon the merits four questions were presented, viz: (1) Whether petitioners were barred by laches in asserting their claim; (2) whether the matter in controversy was *res judicata;* (3) whether the bequest violated the rule against perpetuities; and (4) whether the object of the bequest was included within the corporate powers of Maryland Baptist Union Association. The chancellor answered the third inquiry in the negative and the fourth in the affirmative, disregarded questions one and two, passed a decree refusing the relief prayed by petitioners, and dismissed their petition. From that decree this appeal is taken.

The contentions here presented do not arise upon the facts, for, as to these, there is no dispute between the parties. It is also admitted that appellants are the next of kin of the testator, Julius T. Hall. The answers to the questions presented must depend upon the law for their solution, and we will therefore consider the four questions which were before the chancellor in the order previously named.

1. *Laches.* Obviously, if the doctrine of laches is applicable in the present case, no other questions need be considered. But in order for it to be invoked successfully there must be not only mere delay, but delay that works a disadvantage to the party against whom relief is sought. Necessarily, each case is dependent upon its own facts and circumstances. For this reason instances may arise justifying its application when the matters upon which relief is sought arose within a period far short of the time within which the Statute of Limitations

might ordinarily constitute a defense in an action at law, while in others laches will not be applied, although the grounds for relief would, standing alone, be barred by limitations. 4 *Pomeroy's Equity Jurisprudence*, sec. 1442; 19 *Amer. Jur.*, page 352; 21 *C.J.*, page 231; *Baker v. Cooper*, 166 Md. 1, 170 A. 556; *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743; *Mays v. Mays*, 176 Md. 159, 4 A.2nd 121.

The surviving life tenant, Mrs. Wimbrow, lived until January, 1932, and, until her death, appellants had no right to possess the funds in question, since until that time all income therefrom was, from the time of her brother's demise, payable to her. And it may be seriously doubted whether, during Mrs. Wimbrow's lifetime, appellants were, under the provisions of Code, art. 16, secs. 28-34, entitled to a declaratory decree respecting the funds. In any event such decree would have been obtainable only in the court's discretion, and it is generally held that the power to pass such decrees is to be exercised with great care and jealousy. *Fleishman v. Bregel*, 174 Md. 87, 197 A. 593; *Saunders v. Roland Park Co.*, 174 Md. 188, 198 A. 269; *Wahl v. Brewer*, 80 Md. 237, 30 A. 654.

While appellants did not file their petition until approximately six years after the death of the surviving life tenant, it is to be observed that this delay has in no way prejudiced appellees, nor has their position in any manner changed in the meanwhile. Under such circumstances, courts should be hesitant in applying so strict a doctrine as laches, and thereby preventing appellants' case from being considered upon its merits, and this is especially true in the present case, because the testimony of appellants, all of whom live beyond the confines of Maryland, negatives the idea that they had the knowledge or means of knowledge of the facts which created the rights here sought to be enforced. See *Walters v. Order of Holy Cross*, 155 Md. 146, 142 A. 297.

2. *Res Judicata.* The contention that the matter in controversy is *res judicata* deserves some consideration, since, like that respecting laches, if upheld, it would com-

pletely put an end to appellants' case.

The argument advanced is that the Circuit Court for Worcester County, in equity, by assuming jurisdiction of the trust in 1929 and appointing The First National Bank of Snow Hill as trustee, and later upon its resignation appointing Safe Deposit and Trust Company of Baltimore as succeeding trustee, in purely *ex parte* proceedings, thereby determined the character of the bequest, and its action, as evidenced by those orders, determined and concluded the rights of all parties in interest, including appellants. Several answers to the contention are disclosed by the record, among which are the following: (1) That appellants were not parties to that proceeding; (2) that they are not shown to have had any knowledge thereof or knowledge of other facts which put them on notice as to its existence; (3) that the cause was never adjudicated on its merits.

As stated in 34 *C.J. "Judgments,"* sec. (1405)-2: "To constitute a judgment an estoppel there must be a substantial identity of parties as well as of the subject matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action. This rule, that there must be a substantial identity of parties as well as of the subject matter, is based on the fundamental principle that no man can be deprived of his property except by due process of law, a principle which in the United States has been embodied in the federal constitution and in the constitutions of the several states. In applying the rule the courts have allowed themselves a good deal of latitude, observing the spirit of it rather than the letter, and there are some well recognized exceptions to or modifications of it." See also *Ibid,* secs. 1165-1174 (a), 1405-1409-1410; and *Trayhern v. Colburn,* 66 Md. 277, 7 A. 459; *Shryock v. Hensel,* 95 Md. 614, 53 A. 412; *Parsons v. Urie,* 104 Md. 238, 64 A. 927; *Murphy v. Coale,* 107 Md. 198, 68 A.

615; *Lumpkin v. Lumpkin,* 108 Md. 470, 70 A. 238; *Feldmeyer v. Werntz,* 119 Md. 285, 292, 86 A. 986; *Wiley v. McComas,* 137 Md. 637, 113 A. 98.

3. *Perpetuities.* The rule against perpetuities is directed against the vesting of interests at a future date and has no application to interests which are already vested. *Miller, Construction of Wills,* sec. 322. And the word "vest," as used in the law of property, "signifies the fixation of a present right to the immediate or future enjoyment of property." *Safe Deposit & Trust Co. v. Sheehan,* 169 Md. 93, 107, 179 A. 536, 543. The law favors the early vesting of estates, and as a general rule courts will, when there is more than one period mentioned, adopt the earlier one, unless this contravenes the intent of the testator or donor as revealed by the terms of the instrument. *Miller, Construction of Wills,* sec. 226. The general principle is that "any devise or bequest in favor of a person or persons *in esse,* whether such persons be individualized or treated as a class, confers an immediately vested interest upon the death of the testator, although the time of possession or enjoyment may be postponed, unless there be some clearly expressed desire or some manifest reason for suspending or deferring the time of vesting." *Ibid,* sec. 277.

Maryland Baptist Union Association did not, in accordance with the terms of the sixth item of testator's will, raise within twelve months a like sum to build an Orphans' Home in Maryland, and it is argued from this that the trust may during the period of accumulation continue for such time as to violate the rule. But it is not the duration of the trust that determines whether the rule is violated. *Miller, Construction of Wills,* sec. 326; *Turner v. Safe Deposit & Trust Co.,* 148 Md. 371, 129 A. 294.

No provision appears in the will to indicate that the intention of the testator was to postpone vesting the estate in Maryland Baptist Union Association, and this being true, it would seem that, under the settled rules of construction, to which reference has been made, the

Association's right to receive the benefits of the bequest vested at the death of the testator, the enjoyment being postponed during the lives of the life tenants and, as it develops, during the period of accumulation. This view certainly does no violence to the language used by the testator. *Cole v. Safe Deposit & Trust Co.,* 143 Md. 90, 94, 121 A. 911. See also subsection (a) to note 89, 48 *C.J.,* page 990; *Tayloe v. Mosher,* 29 Md. 443, 451; *Buck v. Lantz,* 49 Md. 439, 445.

We are therefore of the opinion that, assuming the Maryland Baptist Union Association had power to take the bequest, the chancellor was correct in holding that the rule against perpetuities had no application to the bequest under consideration, because the same vested at the time of testator's death.

4. *Power of the Maryland Baptist Union Association to take the fund.* This brings us to the final question, which is whether the purposes of the bequest are included within the corporate powers of the Maryland Baptist Union Association. The corporation came into existence on April 30th, 1853, under the provisions of chapter 323 of the Acts of 1846. Its name is suggestive of its character, but article 2 of its charter expressly declares its objects and purposes to be as follows: "The object of this association shall be to advance the cause of true religion in Maryland and the District of Columbia by efforts to aid feeble Baptist Churches and supply destitute neighborhoods with preaching to encourage the more general diffusion and reading of the Sacred Scriptures and evangelical books and tracts to provide a fraternal intercourse among the Baptist Churches and to afford opportunity during the session of the association of preaching and other devotional exercises."

While by the sixth paragraph of its answer to appellants' petition, the association asserts that it is a private eleemosynary corporation and not a religious corporation, this allegation is not sustained by the proof, and it is not without signifiance, in this connection, that although chapter 231 of the Acts of 1852, authorizing the for-

mation of corporations for charitable purposes, was passed prior to the incorporation of Maryland Baptist Union Association, yet the charter of the latter in express terms declares that the corporation is formed under the Act of 1846, ch. 323. That Act was not incorporated in the Code of 1860, which did, however, include the provisions of chapter 231, Acts of 1852. The former Act (chapter 323, Acts 1846) differs from the latter in that it specifically authorizes the formation of corporations for religious purposes, but the latter Act contains no express provisions repealing the former. The Legislature, in adopting the Code of 1860, by chapter 1 provided, however, that the laws therein set forth should be in lieu of and a substitute for all public general and public local laws previously passed. See Code 1860, art. 1 (Rules of Interpretation), sec. 1, by which all rights vested and existing at the time of its adoption were preserved.

It may also be stated that, in obedience to article 38 of the Maryland Declaration of Rights, the bequest under consideration has received legislative sanction (Acts of 1936, 1st Special Session, ch. 14, sec. 1, item 22). While this circumstance, standing alone, would not be sufficient to identify the Maryland Baptist Union Association as a religious sect, order, or denomination within the purview of the article, the conclusion is, under the considerations previously mentioned, irresistible that it is a religious corporation. And it cannot be said that legislative sanction of the bequest had the effect of enlarging its powers beyond the purposes and objects declared in its charter, for the sanction of the Legislature to the bequest was necessary, notwithstanding the religious corporation was given power under its charter to take and hold property. *Church Extension v. Smith*, 56; Md. 362, 391; State v. *Warren*, 28 Md. 338, 354; *Mills v. Trustees of Zion Chapel*, 119 Md. 510, 513, 87 A. 257; *Regents of University of Maryland v. Trustees of Calvary Church*, 104 Md. 635, 640, 65 A. 398; *Grove v. Trustees of Congregation of Disciples*, 33 Md. 451, 454; *Gardner v. McNeal*, 117 Md. 27, 33, 82 A. 988.

In final analysis, the problem is reduced to this in-

quiry: Did the Maryland Baptist Union Association at the time of the death of the testator possess the power to take the bequest for the purpose to which he limited it? 7 *Fletcher, Cyclopedia Corporations,* sec. 3524; *In re McGraw's Estate,* 111 N.Y. 66, 19 N.E. 233, 2 L.R.A. 387.

The chancellor apparently rested his opinion in favor of the existence of the power upon the decision of this court in *Mt. St. Mary's College v. Williams,* 132 Md. 184, 103 A. 479. In that case a sum of money had been bequeathed by the testator to Mt. St. Mary's College "for the erection of a plain substantial stone church on the site of the present old church on the hill near the graveyard." It was held that the idea of the worship of God was too closely associated with that of education to permit it to be said that the corporation did not have the power to build and maintain a church on its own property as directed by the will. But the facts in that case are not analogous to those in the case at bar, for here we are dealing with a religious corporation, whose powers are clearly defined in its charter as follows:

1. To advance the cause of true religion in Maryland and the District of Columbia by efforts to aid feeble Baptist Churches.

2. To supply destitute neighborhoods with preaching.

3. To encourage the more general diffusion and reading of the sacred scriptures and evangelical books and tracts.

4. To provide a fraternal intercourse among the Baptist Churches.

5. To afford opportunity during the session of the association of preaching and other devotional exercises.

In 14A *C.J.,* page 255, sec. 2087, it is stated: "The act, in order that the power to do it may be implied, must tend directly and immediately, and not slightly or remotely, to accomplish the object for which the corporation was created, an incidental power being 'one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has a slight or remote relation to it,' nor one that is merely convenient or useful. An incidental or implied power

exists only for the purpose of enabling a corporation to carry out the powers expressly granted to it, that is to say, the powers necessary to accomplish the purpose of its existence, and can in no case avail to enlarge the express powers, and thereby warrant it to devote its efforts and capital to other purposes than such as its charter expressly authorizes, or to engage in collateral enterprises, not directly, but only remotely connected with its specific corporate purposes. Such a power must result from the charter by necessary implication, regard being had to the object and purpose of the corporation; and if there is any uncertainty or doubt as to the terms of the charter it must be resolved in favor of the public." See also 13 *Am. Jur.*, page 772, sec. 740, to the same effect.

It is argued on behalf of appellees that the care of orphans is a part of true religion. Without disputing that general contention, it is sufficient to state that the term "true religion" as used in the charter of Maryland Baptist Union Association is specifically limited so as to apply only to the purposes stated in the association's charter.

A consideration of the decisions of this court in *Hanson v. Little Sisters*, 79 Md. 434, 32 A. 1052; *Eutaw Place Baptist Church v. Shively*, 67 Md. 493, 10 A. 244, and *Woman's Foreign Missionary Society of M. E. Church v. Mitchell*, 93 Md. 199, 48 A. 737, discloses situations entirely foreign to those presented on this record. It cannot be disputed that a sunday school or parish school, as it is variously termed, has always been considered as an integral part of a church and within its scope of activity. But in the present case there is no power granted by the corporation's charter to establish an orphans' home, and such a power is so foreign to the declared purposes expressed in the charter that it cannot be deemed as granted by implication.

It has been urged upon the court that it was testator's intention for appellants not to receive any benefit from the fund in question, and that to hold the Maryland Baptist Union Association without power to take the fund would be equivalent to frustrating his intention, but this argument may be answered by the statement

that it becomes our duty to declare the law as it exists. As said by this court in *State, use of Trustees of M. E. Church v. Warren,* 28 Md. 338, "It is to be regretted that the wishes of the testatrix should be thus defeated, but our duty is to declare the law as we find it to be, not to make law for the purpose of carrying out what we may think in individual cases, ought to be done."

Furthermore, that argument loses force when it is considered that, whether the bequest be stricken down or upheld, the testator's wishes apparently will not be gratified, for the Maryland Baptist Union Association has no power, express or implied, to establish a home for orphans, never has established one, and so far as can be determined from the record, does not intend to establish such an institution. On the contrary, it is on its behalf insisted that it takes the fund for such purposes as are within its charter powers, and the testator's injunction that the fund is to be used to establish an orphan's home is merely precatory. To this contention we do not subscribe, and the language of the will does not sustain it. If the will is to be thus construed, no purpose could have been served by the requirement that the recipient of the fund was not permitted to have it until it raised an equal amount, or, on its failure so to do, until interest accumulations caused it to be doubled. Obviously, this requirement was because testator realized the insufficiency of the fund for the erection of an orphans' home, and desired to postpone its enjoyment by Maryland Baptist Union Association until such amount was in existence.

It being our conclusion that the bequest fails because of the inability of Maryland Baptist Union Association to take it for the purpose specified, it follows that testator died intestate as to the same, and that the fund in question belongs to his next of kin.

*Decree reversed and cause remanded for further proceedings not inconsistent with the views herein expressed, the costs, above and below, to be paid out of the funds in the hands of the trustee.*